# EXHIBIT A

## SALE CONTRACT-ALABAMA                                     WILLIAM J. WADE, TRUSTEE

THIS AGREEMENT made this _3_ day of _April_, _2001_, between _Thomas Holloway & Terri L. Wilson_ _Husband/Wife_ (TH TW), hereinafter referred to as "Buyer" or "Debtor", whose address is _5808 MT. Olive Rd. Gardendale Al_, and WILLIAM J. WADE, not in his individual capacity, but solely as trustee of Mid State Trust [illegible] c/o Richards, Layton & Finger, Rodney Square North, Wilmington, Delaware 19890, and JIM WALTER HOMES, INC., a Florida Corporation, having its place of business at 1500 North Dale Mabry Highway, Tampa, Florida 33607, hereinafter referred to collectively as "Seller".

**WITNESSETH:**

1. That Seller agrees to sell a house and the land upon which it is situated, hereinafter together referred to as the "property", located at: _____ the legal description of which is as follows:

See Exhibit "B" attached    Subject to Home Office approval
Subject to  any outstanding rights of redemption.

892205

If applicable, Exhibits "A", "B", "C" and "D" of even date herewith and attached hereto before execution hereof are made a part of this contract.

2. The cash price of the property is $ _67,250.00_, and Buyer has made a down payment of $ _250.00_. Buyer, however, has elected and agrees to purchase the property for a Time Price of $ _148,014.00_, which includes a Finance Charge of $ _80,264.00_ calculated at an Annual Percentage Rate of _9 1/4_ % per annum. The Finance Charge begins to accrue thirty days prior to the due date of the first scheduled installment. Buyer and Seller agree that the Finance Charge will be recognized for federal income tax purposes in equal parts over the life of this contract.

3. Buyer covenants and agrees to execute and comply with the provisions of the Seller's form Promissory Note in the amount of the Total of Payments shown herein and shall further execute and comply with the provisions of Seller's form Mortgage encumbering the above described property and securing payment of the Promissory Note.

4. Buyer may prepay in full all sums remaining unpaid under this contract at any time, and, upon prepayment, Buyer shall receive a credit for all unearned charges, including a credit for the unearned Finance Charge computed pursuant to the "Actuarial Method".

5. In the event Buyer fails to perform any obligation contained in this contract, or in said Promissory Note or Mortgage, the Seller may, at Seller's option, declare all sums remaining unpaid under this contract immediately due and payable. In the event of such acceleration, Buyer shall receive a credit for any unearned Finance Charge computed pursuant to the "Actuarial Method". Any failure to exercise said option of acceleration shall not constitute a waiver of the right to exercise the same at any other time.

6. For each installment not paid in full within fifteen (15) days of its scheduled due date, Buyer will be charged 5% of the unpaid portion of the installment or $.50, whichever is greater, not to exceed $100.

7. The Seller requires the Buyer to keep the house sold under this contract insured against damage or loss from fire, lightning and extended coverage. Such coverage must begin not later than thirty (30) days from the date of this contract and continue until such time as Buyer's obligations under this contract are fully discharged.

Buyer may choose the agency or company through which any required insurance is to be obtained, so long as the agency or company is authorized to do business in Alabama. Buyer has the option of providing the required insurance through an existing policy or a policy independently obtained and paid for by the Buyer, or applying for insurance coverage through Best Insurors, Inc.

THE REQUIRED INSURANCE COVERAGE MUST INSURE THE HOUSE TO THE EXTENT OF THE LESSER OF THE ACTUAL CASH VALUE OF THE HOUSE OR THE INDEBTEDNESS SECURED BY THE MORTGAGE.

IF FIRE, LIGHTNING AND EXTENDED COVERAGE IN THE AMOUNT OF THE CASH PRICE OF THE HOUSE IS OBTAINED THROUGH BEST INSURORS, INC., THE INITIAL ANNUAL PREMIUM IS ESTIMATED AT $ _339.00_ FOR THE ONE-YEAR TERM OF THE POLICY. SELLER IS UNABLE TO PROVIDE THE EXACT AMOUNT OF THE PREMIUM AT THIS TIME BECAUSE IT IS BASED ON UNIFORM RATING FACTORS WHICH ARE NOT CURRENTLY KNOWN TO US BUT WHICH ARE USED BY BEST INSURORS, INC. IN ALABAMA IN CALCULATING THE AMOUNT OF PREMIUM TO BE CHARGED. Seller is unable to advise Buyer of the premium if the required insurance is not obtained through Best Insurors, Inc.

The required policies shall contain a clause making the proceeds payable to the Seller, or its assigns, to the extent of its interest in the insured property. Seller reserves the right to refuse to accept an insurer offered by Buyer if the policy is not in the form or amount acceptable to Seller.

In the event Buyer fails to furnish an acceptable policy of insurance, premiums prepaid, or in the event Buyer fails to keep in effect the required insurance coverage, Seller shall have the right, but not the obligation, to purchase such coverage for Buyer, and either add the premiums to the outstanding indebtedness or demand reimbursement, immediately or at any time thereafter, from Buyer for those costs. Seller's right to purchase such insurance coverage shall continue until Buyer delivers or causes to be delivered to Seller an insurance policy or policies providing the required insurance coverage together with satisfactory evidence of payment therefor, or until Buyer's indebtedness is fully discharged, whichever occurs first.

Buyer must make all insurance premium payments, whether for insurance purchased through Best Insurors, Inc. or from another company directly to the agency or company from which the insurance is obtained. No premiums for insurance are included in this contract nor are any premiums paid for through Buyer's down payment or monthly payment. INITIAL THE APPLICABLE BOX:

The undersigned Buyer elects to obtain the insurance through Best Insurors, Inc. [ ]

[TH TW] The undersigned Buyer elects to furnish the required insurance through an insurance company other than Best Insurors, Inc.

IN CONNECTION WITH THE FOREGOING ELECTION, BUYER ACKNOWLEDGES HAVING READ, UNDERSTOOD AND ACCEPTED THE ADDITIONAL INSURANCE DISCLOSURES SET FORTH IN EXHIBIT "C" ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE. _TH_ _TW_ (BUYER'S INITIALS)

Note - In the event Buyer elects to obtain Buyer's own insurance, a copy of the policy must be forwarded to Seller not later than thirty (30) days from the date of this contract.

8. This instrument and the other instruments signed in connection with this transaction contain the price and all the terms and conditions agreed upon by Buyer and Seller, and no statement, representation or promise not set forth in this contract, or any of the other said instruments, has been made to induce either party to enter into this transaction.

IN CONNECTION WITH THE FOREGOING, BUYER ACKNOWLEDGES HAVING READ, UNDERSTOOD AND ACCEPTED THE ARBITRATION AGREEMENT SET FORTH IN EXHIBIT "D" ATTACHED HERETO AND INCORPORATED HEREIN BY THIS REFERENCE. _TH_ _TW_ (BUYER'S INITIALS)

9. In the event of an unsatisfactory report of Buyer's credit is received, Seller, at its option, may within 10 days thereafter, cancel this agreement upon returning to Buyer any payments or deposits. All provisions of this contract are subject to approval by an officer of Jim Walter Homes, Inc., at Tampa, Florida, and the contract shall not become effective until signed by both Buyer and said officer of Seller.

10. Seller may assign its interest in this contract and this contract shall be binding upon and inure to the benefit of the assigns and successors of the Seller, if any.

11. The Mortgage securing the indebtedness hereunder may not be assumed.

12. Buyer agrees to pay all costs and expenses of collection of the indebtedness under this contract, including reasonable attorneys' fees not exceeding 15% of the unpaid debt after default and referral to an attorney, not a salaried employee of the Seller.

### FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit at a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled (not including any down payment). | TOTAL SALES PRICE The total cost of your purchase on credit, including your down payment of $ _250.00_ |
|---|---|---|---|---|
| _9 1/4_ % | $ _80,264.00_ | $ _67,000.00_ | $ _147,264.00_ | $ _148,014.00_ |

Your payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENT | WHEN PAYMENTS ARE DUE |
|---|---|---|
| _240_ | $ _613.60_ | FIRST PAYMENT DUE: _June 5 2001_ SUBSEQUENT PAYMENTS BECOME DUE AND PAYABLE ON THE 5th DAY OF EACH SUCCEEDING MONTH UNTIL FULLY PAID. |

You may obtain property insurance from anyone you want that is acceptable to Seller. If you get the insurance through Best Insurors, Inc., your annual premium is estimated to be $ _339.00_ for the one year term of the policy.

Security: You are giving a security interest in real property together with all improvements now or hereafter placed on the property located at:
Street Address or Rural Route: _____ City _Pell City_ State _Al_
Late Charge: If a payment is late, you will be charged 5% of the unpaid portion of the installment or $.50, whichever is greater, not to exceed $100.
Prepayment: If you pay off early, you will not have to pay a penalty and you will be entitled to a refund of part of the Finance Charge.
Assumption: No assumption of this indebtedness will be allowed.
See the remainder of this contract and the documents signed in conjunction with it for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment and penalties.

**Itemization of Amount Financed**
Cash Price of $ _67,250.00_  Less Down Payment of $ _250.00_  Amount Financed $ _67,000.00_

**NOTICE**
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**BUYER'S RIGHT TO CANCEL:**
IF THIS AGREEMENT WAS SOLICITED AT YOUR RESIDENCE AND YOU DO NOT WANT THE GOODS OR SERVICES, YOU MAY CANCEL THIS AGREEMENT BY DELIVERING OR MAILING A NOTICE TO THE SELLER. THE NOTICE MUST SAY THAT YOU DO NOT WANT THE GOODS OR SERVICES AND MUST BE DELIVERED OR MAILED BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER YOU SIGN THIS AGREEMENT. THE NOTICE MUST BE DELIVERED OR MAILED TO: JIM WALTER HOMES, INC., 1500 NORTH DALE MABRY HWY., TAMPA, FLORIDA 33607, ATTN: TITLE DEPT.
SEE ALSO THE ATTACHED NOTICE OF CANCELLATION FORM.
NOTICE TO THE BUYER: DO NOT SIGN THIS BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES.
THE BUYER ACKNOWLEDGES THAT BUYER HAD THE ELECTION OF PURCHASING EITHER FOR CASH OR UPON A TIME PRICE BASIS AND HAS ELECTED TO PURCHASE ON THE TIME PRICE BASIS.
THE BUYER ACKNOWLEDGES THAT BUYER RECEIVED A COPY OF THIS AGREEMENT AND THAT BEFORE SIGNING THE SAME, THE CONTRACT CONTAINED THE ENTIRE TERMS AND ALL BLANK SPACES HAD BEEN FILLED IN PRIOR TO THE SIGNING OF THE SAME.
IN WITNESS WHEREOF, the Buyer and Seller have hereunto set their hands and seals, the Buyer at _Oxford Al_ (TH TW) the _3_ day of _April_ _TH TW_ , _2001_ , and the Seller at Tampa, Florida the _17th_ day of _April_ , _2001_.
CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

WILLIAM J. WADE, not in his (TH TW)
individual capacity, but solely
as trustee of Mid-State Trust _VIII_                    _Thomas Holloway_
BY: JIM WALTER HOMES, INC.       WITNESS                                                    BUYER  SEAL
ITS ATTORNEY-IN-FACT FOR WILLIAM J. WADE                                    _Terri L. Wilson_
                                 WITNESS       JIM WALTER HOMES, INC.                      BUYER  SEAL

By _LANE HUDSON, VICE-PRESIDENT_ Seal    By _____ Seal
FORM MST 1236 (10/97) RESALE                LANE HUDSON, VICE-PRESIDENT  SELLER

**TAMPA COPY: ATTACH BREAKDOWN, CREDIT REPORT AND ORIGINAL NOTE.**

RESALE OF MARY JOHNSON #5-24-23

**EXHIBIT "A"**

Jim Walter homes, inc.         892205

## PACKAGE, OPTION AND ADDITIONAL AGREEMENT ADDITION

executed in conjunction with that certain Contract entered into between Jim Walter Homes, Inc., and the undersigned Buyer(s), of even date herewith.

The following packages, options and additions are made a part of said Contract as if fully recited therein:

Packages, Options, and Additions:

*This House is being sold As is where is With No Warranties Either Written or Implied*

have been selected, approved and purchased by the Owner (Buyer).

Any items, supplies and materials delivered to Owner (Buyer) and not to be installed or incorporated into the house by the Seller (Builder) shall become the responsibility of the Owner (Buyer) upon delivery thereof and Seller (Builder) shall be thereafter fully and completely relieved of and from any liability or obligation for the loss, damage, injury, maintenance, safe keeping or responsibility whatsoever thereto, unless caused by the act or omission of Seller (Builder).

The Material Description and Data Rider attached to this contract and identified as Exhibit "B", contains the description and specifications of certain items, commodities, materials and services used, delivered or performed by Builder (Seller) or incorporated into the house to be constructed by Builder (Seller) and, where applicable, the content and substance of those packages, options and additions listed above, or otherwise selected, approved and purchased by the Owner (Buyer), are limited and defined thereunder, and all parties to this contract shall be bound and governed by the terms and limitations thereof.

BRANCH _Oxford_

CUSTOMERS NAME _Thomas Holloway & Terri Wilson_

DATED _4/3/___

BY: _LANE HUDSON, VICE-PRESIDENT_

(OWNER) _Thomas Holloway_   (BUYER)

(OWNER)   (BUYER)

(SELLER)   (BUILDER)

HOME OFFICE COPY

## ADDENDUM TO:
## EXHIBIT "A"
## JIM WALTER HOMES, INC.
## PACKAGE, OPTION AND ADDITIONAL AGREEMENT ADDITION

892205

executed in conjunction with that certain Sale Contract entered into between Jim Walter Homes, Inc., and the undersigned Buyer(s), of even date herewith.

The following terms and conditions are made a part of said Exhibit "A" as if fully recited therein:

Buyers acknowledge and represent that Buyers have been given full and ample opportunity to view, inspect and examine thoroughly any and all aspects and conditions of the real property and house made the subject of the aforesaid Sale Contract and that Buyers have fully and thoroughly viewed, examined and inspected said real property and house and all aspects and conditions thereof or therein; and that except with respect to those options or additional agreements specifically set forth in the Exhibit "A" to which this document addends, Buyers accept said real property and house **"AS IS"** and with all faults, defects, insufficiencies, problems and conditions.

Buyers acknowledge and represent that no statements or representations have been made or given by or on behalf of JWHI contrary to anything contained herein and that no one has the authority to make any statement or representation contrary to anything contained herein. Buyers acknowledge and represent that Buyers understand and are well aware that no one has the authority to change, alter or contradict the terms and provisions hereof or of the aforesaid Sale Contract.

Buyers agree and acknowledge that JWHI, in entering into the aforesaid Sale Contract, has relied upon the validity and effectiveness of the disclaimers contained herein and the truthfulness and reliability of the acknowledgements and representations of Buyers contained herein and that, but for the validity and effectiveness of the disclaimers contained herein and the truthfulness and reliability of the acknowledgements and representations of Buyers contained herein, JWHI would not have entered into the aforesaid Sale Contract.

SIGNED this __3__ day of __April__, 19__2001__, effective the day and date of the aforesaid Sale Contract.

_____
Buyer

_____
Buyer

FORM JW 1215 REV. 5/92                HOME OFFICE

RESALE OF MARY JOHNSON #5524?3    EXHIBIT "C"

# Jim Walter homes, inc.    892205

## EXISTING HOUSE INSURANCE DISCLOSURE STATEMENT

Each of the undersigned (who, whether one or more, is called the Buyer in the contract to which this statement is attached as an Exhibit (the "Contract")) hereby certifies to Jim Walter Homes, Inc. ("JWH") that I understand and acknowledge the following:

- That the Contract to have JWH sell me an existing house ("House") and the mortgage, deed of trust or deed to secure debt (each of which, as applicable, is called the "Security Instrument") I am signing with the Contract requires me to maintain continuous insurance coverage against damage or loss to my House from fire, lightning, windstorm and extended coverage ("Fire and Extended Coverage") in an amount at least sufficient to protect JWH's financial interest in my House until such time as I have fully paid JWH for my House.
- That I must provide proof of the required insurance coverage to JWH within thirty (30) days after the date of the Contract to sell me an existing House and that all renewal policies thereafter must be provided to JWH thirty (30) days prior to the expiration of the current policy.
- That if I fail to provide such insurance coverage, I will be in default of my obligations under the Contract, which could subject me, at the option of JWH, to the remedies for breach of contract.
- That the insurance coverage required under my Contract and Security Instrument is limited to a Fire and Extended Coverage policy. This type of policy will only insure against damage done to my House itself as a result of an insurable event. It does not include protection for damage to the contents of my House or for any liability I may have as a homeowner for personal injuries to other people, both of which are coverages generally provided by a "Homeowners" policy.
- That Best Insurors, Inc. ("Best") offers, as disclosed in the Contract, insurance coverage that meets the requirements under the Contract and Security Instrument. Best is a Florida corporation affiliated with JWH by common ownership. Best has an established relationship with a licensed insurance agent domiciled in my state.
- That I have the right to obtain insurance coverage beyond the insurance required by the Contract and the Security Instrument; that it will be in my best interest to contact an insurance agent, broker or advisor about the amount and type of policy that would be appropriate for my insurance needs; that I may contact any agent, broker or company I wish in order to obtain the insurance coverage I want at the most competitive price; that I may choose the agency, broker or company through which the required insurance is obtained, provided the agency, broker or company is authorized to do business in my state; and that I may provide the required insurance coverage either through an existing policy or a new policy that I purchase independently.
- That the required insurance policy must contain a clause making the proceeds of such insurance payable to JWH, or its assigns, to the extent of JWH's financial interest in my House.
- That JWH shall have the right, at its option, either to apply such insurance proceeds to the unpaid balance of the Contract or to permit such proceeds to be used to repair any damage to my House.

I further understand and acknowledge:

- That once JWH completes the sale of an existing House to me, it intends to assign my Contract and Security Instrument (together, referred to as "Account") to Mid-State Homes, Inc. ("MSH"), a company affiliated with JWH by common ownership; and that MSH will either retain or further assign my Account, but in any event will service my Account, which will include verifying that I have provided the insurance coverage required by the Contract and the Security Instrument.
- That everything following the first paragraph in this Statement which refers to JWH also applies to MSH and to any other assignee of the Contract.
- That the Contract and the Security Instrument further provide that, if I fail to deliver proof of the required insurance coverage at any time during the term of the Contract, **JWH has the right – but not the obligation – to purchase such insurance for its own protection at my expense;** this practice is commonly known as buying collateral protection insurance or "forceplacing" insurance.
- That JWH does not wish to forceplace insurance on my House; and that it is in my own best interest, for the reasons stated below, to obtain my own insurance on my House rather than have JWH forceplace insurance:
    (1) JWH's exercise of its right to forceplace insurance with respect to any particular policy year or succession or combination of policy years does not cure my default under the Contract and Security Instrument and shall not be deemed or considered a waiver by JWH of my continuing obligation to provide my own insurance coverage, and JWH shall not, by exercising its right on one or more occasions to forceplace coverage, thereafter become obligated to notify me of its future election not to forceplace insurance coverage on my House.
    (2) JWH presently buys its forceplaced insurance coverage through Best. I hereby authorize JWH, if I fail to provide evidence to JWH that I have obtained the required insurance coverage, to forceplace coverage through Best or any other agent or agency properly licensed to conduct such business in my state.
    (3) The coverage JWH purchases from Best is limited to a Fire and Extended Coverage policy. If I want a Homeowner's policy, I must purchase my own policy.
    (4) If JWH forceplaces insurance on my House, the premium will be charged to me. The premium for Fire and Extended Coverage Insurance will be within the range of premiums authorized by the Department of Insurance or the Insurance Commissioner of my state. However, competing insurance agencies or companies operating in my state may offer similar coverage, or Homeowners coverage, at a lower cost. If I want to obtain the most competitive price and/or the additional coverage offered by Homeowners insurance, I should look for and purchase such insurance myself.
    (5) If JWH forceplaces insurance on my House because I fail to provide evidence that I have purchased the required insurance, JWH, at its option, will order a policy from Best to provide the required coverage. Best will send me the policy and an invoice for payment of the premium. I am expected to pay Best directly. If I fail to pay Best, JWH will have to pay Best directly. If JWH pays Best, I am required by the Contract and Security Instrument to fully reimburse JWH immediately for the cost of such insurance. Until I have fully reimbursed JWH, the outstanding amount of the advance made by JWH to pay the premium to Best will accrue interest (if permitted by my state's law) at the rate disclosed in the Contract.
    (6) The insurance coverage purchased by JWH will be solely to protect its own financial interest in my House. It will not be for my protection. Consequently, if JWH forceplaces insurance, JWH will only purchase insurance in an amount needed to pay off the unpaid balance of the Contract as of the date the insurance is purchased or such lesser amount as may be provided in the Contract. This amount will include the premium for such insurance. Most likely, if insurance is forceplaced and my House is later totally destroyed by an insurable event (such as fire), all of the insurance proceeds paid by the insurance company will be paid to JWH to satisfy my Account. I will receive little, if any, of the proceeds myself. I may lose, therefore, the equity in my House and the value of all of the contents in my House. I also may be liable for any personal injuries that may occur that would normally be covered by Homeowners insurance.

I hereby authorize JWH to use and disclose to insurance agents or companies, including Best, any and all information regarding the insurance requirements contained in my Contract and Security Instrument, the balance due under my Contract, and the value of my House and any other information reasonably necessary to obtain insurance coverage.

I hereby acknowledge reading, understanding and receiving on the date indicated below a copy of this Insurance Disclosure Statement. I acknowledge that JWH and its employees and agents have not advised me about the amount of insurance I should buy or required me to purchase insurance through any particular agent, broker or company. I further acknowledge that JWH has advised me to seek assistance about my insurance needs from a licensed insurance agent or other insurance advisor. I further understand and agree that the above requirements and procedures are consistent with the terms of the Contract and Security Instrument and that JWH and its assigns are under no obligation to purchase insurance coverage for my benefit. If I have any questions about this Insurance Disclosure Statement or any other matter relating to the Contract, I understand that I can telephone, toll-free, 1-800-925-8374 for assistance.

| Date | Buyer - Signature | Date | Buyer - Signature |
|---|---|---|---|
| 4-3-01 | *Thomas Holloway* | 4-3-01 | *Terri L. Wilson* |
| | THOMAS Holloway | | Terri L. Wilson |
| | PRINTED NAME | | PRINTED NAME |

JW 1317 (1/96)

RESALE OF MARY JOHNSON #552423

# EXHIBIT "D"

892205

## JIM WALTER HOMES, INC.

### ARBITRATION AGREEMENT - ALABAMA

The parties agree that, at the election of either party, any controversy or claim arising out of or relating to this contract, or the breach thereof, whether asserted as in tort or contract, or as a federal or state statutory claim, arising before, during or after performance of this contract, shall be settled by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures administered by J•A•M•S/Endispute, and judgment upon the award rendered by the arbitrator may be entered in any Court having jurisdiction thereof. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties herein agree that the Arbitration Hearing will be held within ninety (90) calendar days of the commencement of such arbitration proceeding. The Arbitration shall be conducted in the offices of the Arbitrator located within the closest geographic proximity to the house location stated herein to the cities of Birmingham, Huntsville, Montgomery or Mobile. The parties agree that each party may take the deposition of two (2) persons whether they are both opposing party members or two (2) individuals under the control of the opposing Party, or a combination thereof. The cost of such arbitration shall be divided equally among the parties to the arbitration. Each party shall bear the cost of their own expenses and attorney's fees. The number of arbitrators shall be one.

Buyer acknowledges that Seller is a Florida corporation with its principal place of business in the State of Florida. The parties acknowledge that some or all of the materials, fixtures, and equipment, as well as the source of financing contemplated by this contract, will be purchased, received or have their origin from sources outside the state when this contract is entered into.

Notwithstanding the foregoing, Seller and its assigns, retain the option to use judicial or non-judicial relief to seek  (i) such remedies as foreclosure and ejectment granted to Seller or its successors and assigns in the Mortgage,  (ii) suits to quiet title to any Property covered by the Mortgage,  (iii) suits to establish equitable liens, and  (iv) suits to collect any sums due and owing under this Contract, the Promissory Note, or the Mortgage. The institution and maintenance of an action for judicial relief in a court to seek the remedies of foreclosure and ejectment, to establish quiet title and equitable liens, or to collect any sums due and owing under the Contract, Promissory Note and/or Mortgage shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Contract, including the filing of a counterclaim in a suit brought by Seller, or its assigns, pursuant to this provision.

| 4-3-01 | _Thomas Holloway_ | 4-3-01 | _Terri L. Wilson_ |
|---|---|---|---|
| Date | Buyer - Signature | Date | Buyer - Signature |

| _THomas Holloway_ | _Terri L Wilson_ |
|---|---|
| PRINTED NAME | PRINTED NAME |

JW 5051(Rev. 3/98)

White - Home Office   Canary- Branch   Pink - Customer   Goldenrod - Customer

RESALE OF MARY JOHNSON #552423

**NOTICE OF CANCELLATION***

892205

_Oxford_
(Branch Office)

_Holloway & Wilson_
(Print Buyer(s) Last Name(s))

I hereby acknowledge receipt of this form.
_TH_    _IW_
(Buyer's Initials)

(enter date of transaction)

_4/3/01_
(Date)

You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN BUSINESS DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be canceled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice, or send a telegram, to Jim Walter Homes, Inc. at 1500 North Dale Mabry Highway, Tampa, Florida 33607, Attn: Title Department, NOT LATER THAN MIDNIGHT OF
_4/7/01_
(Date)

I HEREBY CANCEL THIS TRANSACTION.

_____
(Date)

_____
(Buyer's Signature)

_____
(Buyer's Signature)

*This form for use in AL, AZ (Resale only), AR, FL, GA, IL, KY, LA (Resale only), MD, MS, MO, NM (Resale only), NC, OH, OK, SC, TN, TX, VA, WV

JW 5043 (Rev. 2/98)

**White - Customer      Canary - Customer      Pink - Title Dept.**