# EXHIBIT B

Case 2:05-cv-00516-WKW-WC   Document 10-5   Filed 06/21/2005   Page 1 of 5

RESALE OF MARY JOHNSON #552423

# PROMISSORY NOTE – ALABAMA
# WILLIAM J. WADE, TRUSTEE

892205

$ _147,264 00/_          _April 3_____, 200_1_

1. For value received, I, we, and each of us, jointly and severally, promise to pay to WILLIAM J. WADE, not in his individual capacity but solely as trustee of Mid-State Trust _VII_, and JIM WALTER HOMES, INC. (hereinafter collectively the "payee"), the sum of _One Hundred Forty Seven Thousand Two Hundred Sixty Four & XX/100_ Dollars ($ _147,264 00/_ ) payable at P.O. Box 31601, Tampa, Florida 33631-3601, or at such other place as the holder hereof may designate, in _240_ equal consecutive monthly installments of _Six Hundred Thirteen & 60/100_ — Dollars ($ _613 60/_ ) each, the first installment to become due and payable on the _5th_ day of _June_____, 20_01_, and one installment to become due and payable on the _5Th_ day of each succeeding month until payment in full.

2. For each installment not paid in full within fifteen (15) days after its scheduled due date, the undersigned shall pay to the holder of this Note, a late charge of five percent (5%) of the unpaid amount of the installment in default or $.50, whichever is greater, not to exceed $100.

3. If any check tendered to the holder in payment of any sum owed under this Note is not paid or is dishonored by the bank or other depository institution upon which it is drawn, the undersigned agrees to pay the holder of this Note a bad check charge of $20.00 or the actual charge made by the depository institution for the return of an unpaid or dishonored instrument, whichever is greater.

4. Presentment, notice of dishonor, protest, notice of protest and diligence in bringing suit or any other requirement that timely action be taken are hereby waived by all makers, sureties, guarantors and endorsers hereof. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them and their heirs and assigns. This Note shall inure to the benefit of the payee hereof and its endorsees, successors and assigns.

5. The indebtedness evidenced by this Note is secured by a Mortgage of even date herewith on real estate in _Pell City_____, County of _St Clair_____, State of Alabama.

6. If any installment under this Note is not paid when due and remains unpaid for a period of thirty days, or if the undersigned fails to perform or observe any covenant or obligation contained in the Mortgage securing this Note, the entire amount owing hereunder shall be immediately due and payable at the option of the holder of this Note. Any failure of the holder of this Note to exercise said option shall not constitute a waiver of the right to exercise the same at any other time. The amount outstanding hereunder may be prepaid in whole or in part at any time without penalty. In the event of prepayment in full (including payment in full following acceleration of maturity after default), the undersigned shall receive a refund or credit of any unearned finance charge computed according to the "Actuarial Method," provided, that no refund of less than $1.00 will be made.

7. The undersigned agrees to pay a reasonable attorney's fee not exceeding fifteen percent (15%) of the unpaid debt after default and referral of this Note to an attorney not a salaried employee of the holder of this Note.

## NOTICE
**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

_Thomas McCown_____
_Teris L. Wilson_____
_____
_____

THIS NOTE IS NOT A NEGOTIABLE INSTRUMENT

MST 9042 (1/00) Resale

Copy

# MORTGAGE
## WILLIAM J. WADE, TRUSTEE

STATE OF ALABAMA       RESALE OF MARY JOHNSON #552423

County of

THIS INDENTURE is made and entered into this __3__ day of __April__, 20__01__ by and between __Thomas Holloway & Terri L Wilson    H/W__ (hereinafter called "Mortgagor," whether one or more) and William J. Wade, not in his individual capacity but solely as trustee of Mid-State Trust __VII__, a Delaware business trust with an address of c/o Richards, Layton & Finger, Rodney Square North, Wilmington, Delaware 19890, Attention: William J. Wade, and JIM WALTER HOMES, INC., 1500 North Dale Mabry Hwy, Tampa, Florida 33607, (hereinafter collectively called "Mortgagee").

WHEREAS, __Thomas Holloway & Terri L Wilson    H/W__ is (are) justly indebted to the Mortgagee in the sum of __One Hundred Forty Seven Thousand Two Hundred Sixty Four__ Dollars ($ __147,264 00__) as evidenced by that certain promissory note of even date herewith, which is payable in accordance with its terms, and which has a final maturity date of __May 5__, __2021__.

NOW, THEREFORE, in consideration of the premises, and to secure the payment of the debt evidenced by said note and any and all extensions and renewals thereof, or of any part thereof (the aggregate amount of such debt, including any extensions and renewals, is hereinafter collectively called "Debt") and the compliance with all the stipulations herein contained, the Mortgagor does hereby grant, bargain, sell and convey unto the Mortgagee, the following described real estate, situated in __St Clair__ County, Alabama (said real estate being hereinafter called "Real Estate"):

See Exhibit "B" attached.

892205

Together with all the rights, privileges, tenements, appurtenances and fixtures appertaining to the Real Estate, all of which shall be deemed Real Estate and shall be conveyed by this mortgage.

TO HAVE AND TO HOLD the Real Estate unto the Mortgagee, its successors and assigns forever. The Mortgagor covenants with the Mortgagee that the Mortgagor is lawfully seized in fee simple of the Real Estate and has a good right to sell and convey the Real Estate as aforesaid; that the Real Estate is free of all encumbrances, unless otherwise set forth above, and the Mortgagor will warrant and forever defend the title to the Real Estate unto the Mortgagee, against the lawful claims of all persons.

For the purpose of further securing the payment of the Debt, the Mortgagor agrees to: (1) pay all taxes, assessments, and other liens taking priority over this mortgage (hereinafter jointly called "Liens"), and if default is made in the payment of the Liens, or any part thereof, the Mortgagee, at its option, may pay the same; (2) keep the Real Estate continuously insured, in such manner and with such companies as may be satisfactory to the Mortgagee, against loss by fire, vandalism, malicious mischief and other perils usually covered by a fire insurance policy with standard extended coverage endorsement, with loss, if any, payable to the Mortgagee, as its interest may appear; such insurance to be in an amount at least equal to the lesser of the actual cash value of the improvements located on the Real Estate or the indebtedness secured by this mortgage on said improvements; (3) pay any other cost or expense which will protect Mortgagee's security in the Real Estate and Mortgagee may, but is under no obligation to do so, make any advance or pay any cost or incur any expense which Mortgagee feels will protect its security under this mortgage (whether or not any charge it pays is valid).

The Mortgagor hereby assigns and pledges to the Mortgagee, as further security for the payment of the Debt, each and every policy of hazard insurance now or hereafter in effect which insures said improvements, or any part thereof, together with all the right, title and interest of the Mortgagor in and to each and every such policy, including but not limited to all of the Mortgagor's right, title and interest in and to any premiums paid on such hazard insurance, including all rights to return premiums. If the Mortgagor fails to keep the Real Estate insured as specified above then, at the election of the Mortgagee and without notice to any person, the Mortgagee may declare the entire Debt due and payable and this mortgage subject to foreclosure, and this mortgage may be foreclosed as hereinafter provided; and, regardless of whether the Mortgagee declares the entire Debt due and payable and this mortgage subject to foreclosure, the Mortgagee may, but shall not be obligated to, insure the Real Estate for its full insurable value (or for such lesser amount as the Mortgagee may wish) against such risks of loss, for its own benefit, the proceeds from such insurance (less cost of collecting same), if collected, to be credited against the Debt, or, at the election of the Mortgagee, such proceeds may be used in repairing or reconstructing the improvements located on the Real Estate. All amounts spent by the Mortgagee for insurance or for the payment of Liens or for the protection of its security, shall become a debt due by the Mortgagor to the Mortgagee and at once payable, without demand upon or notice to the Mortgagor, and shall be secured by the lien of this mortgage and shall bear interest from date of payment by the Mortgagee until paid at the Annual Percentage Rate set forth in the Sale Contract dated __4/3/01__ between Mortgagee and the Mortgagor.

As further security for the payment of the Debt, the Mortgagor hereby assigns and pledges to the Mortgagee the following described property, rights, claims, rents, profits, issues and revenues:

1. all rents, profits, issues, and revenues of the Real Estate from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving to the Mortgagor, so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, profits, issues and revenues;

2. all judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Real Estate, or any part thereof, under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Real Estate, or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets, and all payments for the voluntary sale of the Real Estate, or any part thereof, in lieu of the exercise of the power of eminent domain. The Mortgagee is hereby authorized on behalf of, and in the name of, the Mortgagor to execute and deliver valid acquittances for, and appeal from, any such judgments or awards. The Mortgagee may apply all such sums so received, or any part thereof, after the payment of all the Mortgagee's expenses in connection with any proceeding or transaction described in this subparagraph 2, including court costs and attorneys' fees, on the Debt in such manner as the Mortgagee elects, or, at the Mortgagee's option, the entire amount, or any part thereof, so received may be released or may by used to rebuild, repair or restore any or all of the improvements located on the Real Estate.

The Mortgagor agrees to take good care of the Real Estate and all improvements located thereon and not to commit or permit any waste thereon, and at all times to maintain such improvements in as good condition as they now are, reasonable wear and tear excepted.

MST 9043 (1/00) Resale

Notwithstanding any other provision of this mortgage or the note or notes evidencing the Debt, the Debt shall become immediately due and payable, at the option of the Mortgagee, upon the conveyance of the Real Estate, or any part thereof or any interest therein.

The Mortgagor agrees that no delay or failure of the Mortgagee to exercise any option to declare the Debt due and payable shall be deemed a waiver of the Mortgagee's right to exercise such option, either as to any past or present default, and it is agreed that no terms or conditions contained in this mortgage may be waived, altered or changed except by a written instrument signed by the Mortgagor and signed on behalf of the Mortgagee by one of its officers.

After default on the part of the Mortgagor, the Mortgagee, upon bill filed or other proper legal proceeding being commenced for the foreclosure of this mortgage, shall be entitled to the appointment by any competent court, without notice of any party, of a receiver for the rents, issues, revenues and profits of the Real Estate, with power to lease and control the Real Estate, and with such other powers as may be deemed necessary.

UPON CONDITION, HOWEVER, that if the Mortgagor pays the Debt (which Debt includes the indebtedness evidenced by the promissory note or notes referred to hereinbefore and any and all extensions and renewals thereof and all interest on said indebtedness and on any and all such extensions and renewals) and reimburses the Mortgagee for any amounts the Mortgagee has paid in payment of Liens or insurance premiums, and interest thereon, and fulfills all of its obligations under this mortgage, this conveyance shall be null and void. But if: (1) any warranty or representation made in this mortgage is breached or proves false in any material respect; (2) default is made in the due performance of any covenant or agreement of the Mortgagor under this mortgage; (3) default is made in the payment of the Mortgagee of any sum paid by the Mortgagee under the authority of any provision of this mortgage; (4) the Debt, or any part thereof, remains unpaid at maturity; (5) the interest of the Mortgagee in the Real Estate becomes endangered by reason of the enforcement of any prior lien or encumbrance thereon; (6) any statement of lien is filed against the Real Estate, or any part thereof, under the statutes of Alabama relating to the liens of mechanics and materialmen (without regard to the existence or nonexistence of the debt or the lien on which such statement is based); (7) any law is passed imposing or authorizing the imposition of any specific tax upon this mortgage or the Debt or permitting or authorizing the deduction of any such tax from the principal or interest of the Debt, or by virtue of which any tax, lien or assessment upon the Real Estate shall be chargeable against the owner of this mortgage; (8) any of the stipulations contained in this mortgage is declared invalid or inoperative by any court of competent jurisdiction; (9) Mortgagor, or any of them (a) shall apply for or consent to the appointment of a receiver, trustee or liquidator thereof or of the Real Estate or of all or a substantial part of such Mortgagor's assets, (b) be adjudicated a bankrupt or insolvent or file a voluntary petition in bankruptcy, (c) fail, or admit in writing such Mortgagor's inability generally, to pay such Mortgagor's debts as they come due, (d) make a general assignment for the benefit of creditors, (e) file a petition or an answer seeking reorganization or any arrangement with creditors or taking advantage of any insolvency law, or (f) file an answer admitting the material allegations of, or consent to, or default in answering, a petition filed against such Mortgagor in any bankruptcy, reorganization or insolvency proceedings; or (10) an order for relief or other judgment or decree shall be entered by any court of competent jurisdiction, approving a petition seeking liquidation or reorganization of the Mortgagor, or any of them if more than one, or appointing a receiver, trustee or liquidator of any Mortgagor or of the Real Estate or of all or a substantial part of the assets of any Mortgagor; then, upon the happening of any one or more of said events, at the option of the Mortgagee, the unpaid balance of the Debt shall at once become due and payable and this mortgage shall be subject to foreclosure and may be foreclosed as now provided by law in case of past-due mortgages; and the Mortgagee shall be authorized to take possession of the Real Estate and, after giving at least twenty-one days notice of the time, place and terms of sale by publication once a week for three consecutive weeks in some newspaper published in the county in which the Real Estate is located, to sell the Real Estate in front of the courthouse door of said county, at public outcry, to the highest bidder for cash, and to apply the proceeds of said sale as follows: first, to the expense of advertising, selling and conveying the Real Estate and foreclosing this mortgage, including a reasonable attorney's fee; second, to the payment of any amounts that have been spent, or that it may then be necessary to spend, in paying insurance premiums, Liens or encumbrances, with interest thereon; third, to the payment in full of the balance of the Debt whether the same shall or shall not have fully matured at the date of said sale; but no interest shall be collected beyond the day of sale; and fourth, the balance, if any, to be paid to the party or parties appearing of record to be the owner of the Real Estate at the time of the sale, after deducting the cost of ascertaining who is such owner. The Mortgagor agrees that the Mortgagee may bid at any sale had under the terms of this mortgage and may purchase the Real Estate if the highest bidder therefor. At the foreclosure sale the Real Estate may be offered for sale and sold as a whole without first offering it in any other manner or it may be offered for sale and sold in any other manner the Mortgagee may elect.

For each installment not paid in full within fifteen (15) days after its scheduled due date, the Mortgagor shall pay to the Mortgagee, or its assigns, a late charge of five percent (5%) of the unpaid amount of the installment in default or $.50, whichever is greater, not to exceed $100. If any check tendered to Mortgagee, or its assigns, by Mortgagor in payment of any sum owed hereunder is not paid or is dishonored by the bank or other depository institution upon which it is drawn, Mortgagor agrees to pay Mortgagee a bad check charge of $20.00 or the actual charge made by the depository institution for the return of the unpaid or dishonored instrument, whichever is greater, in accordance with Ala. Code (1975) § 8-8-15.

The Mortgagor agrees to pay all costs, including reasonable attorneys' fees not exceeding 15% of the unpaid debt after default and referral for collection to an attorney not a salaried employee of the Mortgagee, incurred by the Mortgagee in collecting or securing or attempting to collect or secure the Debt, or any part thereof, or in defending or attempting to defend the priority of this mortgage against any lien or encumbrance on the Real Estate, unless this mortgage is herein expressly made subject to any such lien or encumbrance; and/or all costs incurred in the foreclosure of this mortgage, either under the power of sale contained herein, or by virtue of the decree of any court of competent jurisdiction. The full amount of such costs incurred by the Mortgagee shall be a part of the Debt and shall be secured by this mortgage. The purchaser at any such sale shall be under no obligation to see to the proper application of the purchase money. In the event of a sale hereunder, the Mortgagee, or the owner of the Debt and mortgage, or auctioneer, shall execute to the purchaser, for and in the name of the Mortgagor, a statutory warranty deed to the Real Estate.

Plural or singular words used herein to designate the undersigned shall be construed to refer to the maker or makers of this mortgage, whether one or more natural persons, corporations, associations, partnerships or other entities. All covenants and agreements herein made by the undersigned shall bind the heirs, personal representatives, successors and assigns of the undersigned; and every option, right and privilege herein reserved or secured to the Mortgagee, shall inure to the benefit of the Mortgagee's successors and assigns.

In witness whereof, the undersigned Mortgagor has (have) executed this instrument on the __3__ day of __April__, 20_01_.

x _Thomas Holloway_
x _Terri L Wilson_

State of Alabama
County of _Calhoun_

I, the undersigned authority, a Notary Public, in and for said county in said state, hereby certify that _Thomas Holloway & Terri L. Wilson_ whose name (s) is (are) signed to the foregoing instrument, and who is (are) known to me, acknowledged before me on this day that, being informed of the contents of said instrument, __They__ executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this __3__ day of __April__, 20 _01_.

_Jennifer Britt_
Notary Public

My commission expires:
_9-26-2004_
NOTARY MUST AFFIX SEAL

# EXHIBIT B

892205

Commencing at the Southeast corner of the Northeast ¼ of the Southwest ¼ of Section 9, Township 17 South, Range 2 East, said point being a found axle; thence North 02 degrees 27 minutes East along the East line of said ¼-¼, a distance of 211.62 feet to a found iron pin; thence North 74 degrees 12 minutes West, a distance of 211.36 feet to an iron pin, said pin being the Point of Beginning of the herein described parcel; thence continue North 74 degrees 12 minutes West, a distance of 212.38 feet to a found iron pin; thence South 12 degrees 45 minutes West, a distance of 92.54 feet to a found iron pin; thence South 74 degrees 39 minutes West, a distance of 251.71 feet to a found iron pin on the Easterly Right of Way of Winnataska Road; thence North 07 degrees 33 minutes West along said Easterly Right of Way, a distance of 128.65 feet to a point; thence North 09 degrees 04 minutes West along said Easterly Right of Way, a distance of 112.86 feet to a point; thence North 10 degrees 47 minutes West along said Easterly Right of Way, a distance of 87.85 feet to an iron pin; thence North 86 degrees 49 minutes East, a distance of 519.47 feet to an iron pin; thence South 00 degrees 00 minutes East, a distance of 254.99 feet to the Point of Beginning of the above described parcel. Said parcel contains 3.00 Acres more or less.

_____
Witness

_____ 4/3/01
Buyer (Thomas Holland)

_____ 4/3/01
Buyer (Terri L. Wilson)