**IN RE: THE ARBITRATION OF**

THOMAS HOLLOWAY and          )
TERRI WILSON HOLLOWAY,       )
                             )
      Plaintiffs,           )
                             )
vs.                          )
                             )
JIM WALTER HOMES, INC.,      )
et al.,                      )
                             )
      Defendants.           )

## FINAL ORDER

    This matter having come before the undersigned arbitrator for decision regarding the claims of the Plaintiffs Thomas and Terri Wilson Holloway against Defendants Jim Walter Homes, Inc. ("JWH"), William J. Wade as Trustee of Mid-State Trust VII ("Trust VII") and Mid-State Homes, Inc. ("Mid-State"). Based upon the uncontroverted evidence presented and the respective arguments of counsel, the undersigned hereby finds as follows:

    Plaintiffs Thomas and Terri Wilson Holloway initiated this case against JWH, Trust VII and Mid-State after being informed that there allegedly was a defect in their chain of title as to certain property the Holloways had acquired from JWH and Trust VII via a Special Warranty Deed. The Holloways assert various legal claims against the Defendants, each of which is premised on the allegation that a defect in their chain of title exists.[1]

---

[1]     The Holloways claims are further premised on the allegation that the "Special Warranty Deed" received from JWH and Trust VII actually contains warranties more extensive than a statutory warranty deed. Because of my ruling as to whether a defect exists in the first place, I do not reach the issue of whether the deed was a statutory warranty deed or whether it conveyed more extensive warranties.

**EXHIBIT A**

The relevant chain in title is set forth below:[2]

| | |
|---|---|
| March 11, 1967 | Warranty Deed from Vinnie Johnson to Roy Johnson and Thelma Pike as tenants in common [Exhibit A] |
| June 16, 1989 | Quit Claim Deed from Thelma Pike to Edna Johnson [Exhibit B] |
| October 31, 1997 | Warranty Deed from Edna Johnson to Roger D. Johnson [Exhibit C] |
| October 21, 1997 | Mortgage from Roger D. Johnson and Mary Johnson to JWH [Exhibit D] |
| February 28, 2001 | Foreclosure Deed from Roger D. Johnson and Mary Johnson to Trust VII [Exhibit E] |
| April 3, 2001 | Special Warranty Deed from Trust VII and JWH to Thomas Holloway and Terri Wilson Holloway [Exhibit F] |

---

2    The legal description to the property at issue is as follows:

Commencing at the Southeast corner of the Northeast ¼ of the Southwest ¼ of Section 9, Township 17 South, Range 2 East, said point being a found axle; thence North 02 degrees 27 minutes East along the East line of said ¼ - ¼, a distance of 211.62 feet to a found iron pin; thence North 74 degrees 12 minutes West, a distance of 211.36 feet to an iron pin, said pin being the Point of Beginning of the herein described parcel; thence continue North 74 degrees 12 minutes West, a distance of 212.38 feet to a found iron pin; thence South 12 degrees 45 minutes West, a distance of 92.54 feet to a found iron pin; thence South 74 degrees 39 minutes West, a distance of 251.71 feet to a found iron pin on the Easterly Right of Way of Winnataska Road; thence North 07 degrees 33 minutes West along said Easterly Right of Way, a distance of 128.65 feet to a point; thence North 10 degrees 47 minutes West along said Easterly Right of Way, a distance of 87.85 feet to an iron pin; hence North 86 degrees 49 minutes East, a distance of 519.47 feet to an iron pin; thence South 00 degrees 00 minutes East, a distance of 254.99 feet to the Point of Beginning of the above described parcel.  Said parcel contains 3.00 Acres more or less.

2

**EXHIBIT A**

April 3, 2001                    Mortgage from Thomas Holloway and Terri Wilson

                                Holloway to JWH and Trust VII [Exhibit G]

Roy and Edna Johnson were husband and wife and they had three children, Roger D.

Johnson, Shirley Hunter and Willis Ray Johnson. Roy Johnson died intestate in 1985, leaving wife

Edna Johnson and his three children. The Holloways contend that because Roy Johnson died

intestate, his wife and children all inherited an interest in the property and therefore a defect in title

exists due to the fact that two of the children (Shirley Hunter and Willis Ray Johnson)[3] have not

transferred their interest to the Holloways or their predecessors in title.

However, under Alabama's intestate succession law at the time of Roy Johnson's death in

1985, all of Roy Johnson's estate would pass to his wife, Edna Johnson, if the value of his estate did

not exceed $50,000.00. Ala. Code § 43-8-41. The Defendants presented undisputed evidence that at

the time of Roy Johnson's death in 1985, the value of his estate was substantially less than

$50,000.00. In light of this undisputed evidence, I find that all of Roy Johnson's interest in the

disputed property passed to his wife, Edna Johnson, and because Edna Johnson appears in the chain

of title, there is no defect or gap in the Holloways' title. Therefore, I hereby enter judgment in favor

of Defendants Jim Walter Homes, Inc., William J. Wade as Trustee of Mid-State Trust VII and Mid-

State Homes, Inc. as to all claims asserted against them by the Holloways and find that title is vested

in the Holloways subject to the mortgage executed by them in favor of Trust VII and JWH.

This the 2 day of January, 2008.

---

3       Because Roger D. Johnson does appear in the chain of title after his father's death, the alleged
defect only exists as to the interest of Shirley Hunter and Willis Ray Johnson.

3

**EXHIBIT A**

Robert A. Huffaker
Arbitrator

cc:   Barry C. Leavell
      George W. Walker, III

4

**EXHIBIT A**

EXHIBIT
**A**

Form STATE—WARRANTY DEED          Vol. 90 page 827

# THE STATE OF ALABAMA, ST. CLAIR COUNTY

Know All Men by these Presents: That for and in consideration of One Dollar and other good and valuable consideration. _____ DOLLARS

to the undersigned grantor Vinnie Johnson, a widow

in hand paid by Roy Johnson and Thelma Johnson Odom Pike _____, the receipt

whereof is hereby acknowledged     I .... do grant, bargain, sell, and convey unto the

said Roy Johnson & Thelma Johnson Odom Pike the following described real estate, to wit:

The East half of the Southwest quarter of Section 9, Township 17, Range 2, East, less eight acres in the Northwest corner of the North- east quarter of the Southwest quarter owned by Ernest Spradlin and Ten Rich, and less two acres in the Southeast corner of the Southeast quarter of the Southwest quarter, now owned by Ernest Spradlin, con- taining 70 acres, more or less.
ALSO, LESS and EXCEPT the following parcels of land:
A tract or parcel of land heretofore conveyed to Thelma Odum on the 9th day of April 1963, as shown by deed record 80, page 9, Probate Office, Pell City, Alabama.
ALSO, LESS and EXCEPT a tract or parcel of land heretofore conveyed to Lucile Andrews as shown by deed record 83, page 677, Probate Office, Pell City, Alabama.
ALSO, LESS and EXCEPT a tract or parcel of land heretofore conveyed to Stanley Johnson and wife Ruthie Johnson on November 17, 1964 as shown by deed record 84, page 785, Probate Office, Pell City, Alabama.
ALSO, LESS and EXCEPT a tract or parcel of land heretofore conveyed to Roy Johnson and wife Edna Johnson as shown by deed record 89 page 729, Probate Office, Pell City, Alabama.

Grantor hereby reserves a life estate in above lands.

            St. Clair
situated in ///// County, Alabama.

To Have and to Hold to the said Roy Johnson and Thelma Johnson Odom Pike
_____ their _____ heirs and assigns forever.

And . I .. do, for myself, I . and . my . heirs, executors, and administrators, covenant with said Roy Johnson and Thelma Johnson Odom Pike _____, heirs and assigns, that I am  lawfully seized in fee simple of said premises; that they are free from all incumbrances, and that . I ... have a good right to sell and convey the same as aforesaid; that ..... I..... will, and my  heirs, executors, and administrators shall, warrant and defend the same to the said Roy Johnson and Thelma Johnson Odom Pike _____ heirs, executors, and assigns, forever, against the lawful claims of all persons.

Given under MY hand _____ and seal, this 11th day of March, 19 67.

        Witnesses to mark:

Elfred L. Scott, atty                (her X) Vinnie Johnson (L.S.)

Beatrice Scott                       _____ (L.S.)

                                     _____ (L.S.)

                                     _____ (L.S.)

**EXHIBIT A**

VOL 90 PAGE 828

THE STATE OF ALABAMA, St. Clair COUNTY

I, the undersigned authority _____ in and for said State and
County, do hereby certify that __ Vinnie Johnson, a widow _____
whose name __is__ signed to the foregoing conveyance, and who __is__ known to me, acknowledged
before me this day that, being informed of the contents of the conveyance __she__ executed the same
voluntarily on the day the same bears date

Given under __my__ hand and seal __this __11th__ day of ___ 19__

_Elard L. Sims_
_Notary Public_

THE STATE OF ALABAMA, _____ COUNTY

I, _____
County, do hereby certify that on the _____ day of _____ 19__ came before me
the within named _____ known to me to
be the wife of the within named _____
who being examined separate and apart from the husband touching her signature to the within convey-
ance acknowledged that she signed the same of her own free will and accord, and without fear, con-
straint, or threats on the part of the husband.

In witness whereof, I hereto set my hand, this _____ day of _____ 19__

---

**WARRANTY DEED**

R. B. Bell 360
P. C.

THE STATE OF ALABAMA,
_____ COUNTY

I hereby certify that this conveyance was filed
in my office for record on the _____ day of _____
at _____ o'clock ____ M., and was duly
recorded in Vol. _____ of Deeds, and duly
recorded in Vol. _____ of Record of Deeds, and Abst. ____
Deed Tax has been paid as required by law.
_____ Judge of Probate
Recording Fee $_____

ST. CLAIR CO. AL ALL CITIZENS, AL.
I CERTIFY THIS
INSTRUMENT WAS FILED
1967 MAY 26
JUDGE OF PROBATE

Deed Tax $ .51
Mtg. Tax ____
Fee Pd. ____
Recording $ 1.65
Total $ 2.20

54777

Recorded deed
Record Vol.
90, page 827

**EXHIBIT A**



EXHIBIT
B

NO TITLE SEARCH BY G. M. FREEMAN

SEND TAX NOTICE TO:

This instrument prepared by G. M. Freeman, Atty., 2829 Moody Parkway, Moody, Alabama 35004-3102, (205)640-7010 or 640-4144.

QUIT CLAIM DEED

STATE OF ALABAMA )

ST. CLAIR COUNTY )

KNOW ALL MEN BY THESE PRESENTS, That, for and in consideration of the sum of Ten and no/100s ($10.00) Dollars and other good and valuable consideration in hand paid to the undersigned, the receipt whereof is hereby acknowledged, the undersigned, Thelma Pike, a widow, (hereinafter called Grantor) hereby remises, releases, quit claims, grants, sells, and conveys to Edna Johnson, a widow, (hereinafter called Grantee(s)), all of her right, title, interest and claim in or to the following described real estate, situated in St. Clair County, Alabama, to-wit:

TRACT #  : For a point-of-beginning, state at the Southeast corner of the North-East 1/4 of the South-West 1/4 of Section 9, Township 17 South, Range 2 East, thence, North 02 degrees 26' 35" East, 1233.01 feet, thence, North 87 degrees 26' 46" West, 254.58 feet, thence, South 02 degrees 26' 35" West, 250 feet; thence, South 46 degrees 52' 05" West 689.10 feet to the East right-of-way of the Public Road, thence, left 373.89 feet along the arc of a curve concave to the West which has a delta angle of 4 degrees 14' 46" and a Radius of 5045.07 feet, thence, South 06 degrees 33' 04" East 256.10 feet, thence, North 02 degrees 26' 35" East 625.71 feet; thence, North 89 degrees 23' 00" East, to the point-of-beginning.  Containing 16.4 acres and lying in the South-East 1/4 of the South-West 1/4 and in the North-East 1/4 of the South-West 1/4 of Section 9, Township 17 South, Range 2 East, St. Clair County, Alabama.

TO HAVE AND TO HOLD to said GRANTEE(S) forever.

Given under my(our) hand(s) and seal(s), this ___ day of _____, 19 ___.

GRANTOR

                                        GRANTOR

STATE OF ALABAMA )

19270

| St. Clair County | |
|---|---|
| Mtg. Tax | $ |
| Deed Tax | 1.00 |
| Indexing Fee | 2.00 |
| Certification | 1.00 |
| Recording Fee | 5.00 |
| Add'l Recording Fee | |
| Total | $ 9.00 |



ST. CLAIR COUNTY )

Before me, the undersigned authority, a Notary Public, in and for said County and said State, personally appeared Lucille Andrews, a widow, and Viola Day Barker, a married woman, who after first being duly sworn deposes and says that being informed and aware of the contents of the foregoing instrument that they have executed it on the day that the same bears date.

SWORN TO AND SUBSCRIBED BEFORE ME THIS 16 DAY OF June, 1979.

_____
NOTARY PUBLIC

RECORDED IN ABOVE
DEED VOLUME & PAGE
FILED PELL CITY, AL
'89 JUN 27 AM 9 38
WALLACE WYATT JR.
JUDGE OF PROBATE

0178  0332

**EXHIBIT A**

EXHIBIT

*C*

# $6,000

Oxford

*This instrument was prepared by:*

PAUL F. MEYERS, II
ATTORNEY AT LAW
2841 MONTGOMERY HIGHWAY
POST OFFICE BOX 645
DOTHAN, ALABAMA 36302

89706480 B DEED
11/20/1997           01:04P
Wallace Wyatt Jr, Judge of Probate

# Warranty Deed

STATE OF ALABAMA }
ST. CLAIR COUNTY }

**Know All Men by These Presents:** That in consideration of Ten Dollars and other valuable consideration to the undersigned Grantor, in hand paid by the Grantee herein, the receipt whereof is acknowledged I,

EDNA JOHNSON, widow,

(herein referred to as Grantor) do grant, bargain, sell, and convey unto

ROGER D. JOHNSON, A MARRIED MAN

(herein referred to as Grantee) the following described real estate situated in ST. CLAIR County, Alabama to-wit:

Commencing at the Southeast corner of the Northeast ¼ of the Southwest ¼ of Section 9, Township 17 South, Range 2 East, said point being a found axle; thence N02°27'E along the East line of said ¼-¼, a distance of 211.62 feet to a found iron pin; thence N74°12'W, a distance of 211.36 feet to an iron pin, said pin being the Point of Beginning of the herein described parcel; thence continue N74°12'W, a distance of 212.38 feet to a found iron pin; thence S12°45'W, a distance of 92.54 feet to a found iron pin; thence S74°39'W, a distance of 251.71 feet to a found iron pin on the Easterly right of way of Winnataska Road; thence N07°33'W along said Easterly right of way, a distance of 128.65 feet to a point; thence N09°04'W along said Easterly right of way, a distance of 112.86 feet to a point; thence N10°47'W along said Easterly right of way, a distance of

RETURN TO:
JIM WALTER HOMES, INC.
P. O. BOX 31601
TAMPA, FLORIDA 33631-3601

**EXHIBIT A**

87.85 feet to an iron pin; thence N86°49'E, a distance of 519.47 feet to an iron pin; thence S00°00'E, a distance of 254.99 feet to the Point of Beginning of the above described parcel. Said parcel contains 3.00 acres more or less. This is a survey of a portion of the property described in Deed Book 178, page 331, recorded in the Judge of Probate Office, St. Clair County (Pell City), Alabama.

**To Have and to Hold Unto the said Grantee,** his heirs and assigns. And I do for myself and for my heirs, executors, and administrators covenant with the said GRANTEE, his heirs and assigns, that I am lawfully seized in fee simple of said premises; that they are free from all encumbrances, unless otherwise noted above; that I have a good right to sell and convey the same as aforesaid; that I will and my heirs, executors and administrators shall warrant and defend the same to the said Grantee, his heirs and assigns forever, against the lawful claims of all persons.

**In Witness Whereof,** I have hereunto set my hand and seal this the _31_ day of October 1997.

_Edna Johnson_
EDNA JOHNSON

STATE OF ALABAMA }
_St. Clair_ COUNTY }

I, the undersigned authority, a Notary Public in and for said County, in said State, hereby certify that EDNA JOHNSON whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that being informed of the contents of the conveyance, she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this the _31_ day of October 1997.

_Paul E. Robbins_
NOTARY PUBLIC
my comm. expires:
MY COMMISSION EXPIRES 10-16-2000     Grantee's address ☞     _5174 Camp Winnataska Rd_
                                                              _Pell City, 35128_

                                        97706380 B DEED
                                        11/20/1997          01:04P
                                        Wallace Wyatt Jr, Judge of Probate

                                        St. Clair County, AL
                                        Wallace Wyatt Jr, Judge of Probate
                                        Date:11/20/1997
                                        Deed Tax = $6.00
                                        Mortgage Tax = $0.00
                                        Recording = $11.50
                                        By: Deputy Clerk

**EXHIBIT A**

EXHIBIT
D

AMOUNT FINANCED
$ 69,470
FINANCE CHARGE
$ 93,320
TIME PRICE
$ 162,790

Oxford
# 180090

**MORTGAGE**

THIS INSTRUMENT PREPARED BY
Thomas E. Portsmouth, Attorney
P. O. Box 31601
Tampa, Florida 33631-3601

STATE OF ALABAMA
County St Clair

THIS INDENTURE is made and entered into this 21 day of October , 19 97 by and between Roger D.
Johnson & Mary F Johnson, Husband Wife
(hereinafter called "Mortgagor," whether one or more) and JIM WALTER HOMES, INC. (hereinafter called "Mortgagee").

WHEREAS, Roger D Johnson & Mary F Johnson, Husband Wife
is (are) justly indebted to the Mortgagee in the sum
of One Hundred Sixty Two Thousand Seven Hundred Ninety Dollars ($ 162,790 )
the first installment to become due and payable on the "Payment Commencement Date" as set forth in the Completion Notice to be mailed or delivered
by Jim Walter Homes, Inc. to the undersigned upon "release" (as that term is defined in the Limited Warranty) of the House by Jim Walter Homes, Inc.,
and one installment to become due on the same day of each succeeding month until payment in full. If not sooner paid, the entire outstanding
indebtedness shall be due and payable _See_ Months from the Payment Commencement Date.

NOW, THEREFORE, in consideration of the premises, and to secure the payment of the debt evidenced by said note and any and all extensions
and renewals thereof, or of any part thereof (the aggregate amount of such debt, including any extensions and renewals, is hereinafter collectively called
"Debt") and the compliance with all the stipulations herein contained, the Mortgagor does hereby grant, bargain, sell and convey unto the Mortgagee,
the following described real estate, situated in _St Clair_ County, Alabama (said real estate being hereinafter
called "Real Estate"):

Purchase Property Consists of 3 acres more or less
Located NCS of Pell City, Al, St Clair CO,
Legal description to be determined by Lender Survey

SEE EXHIBIT "E" ATTACHED

89706461-8 MTG
11/20/1997          01:04p
Wallace Wyatt Jr, Judge of Proba

THIS MORTGAGE IS BEING EXECUTED TO CORRECT AN ERROR APPEARING IN THAT CERTAIN UNRECORDED
MORTGAGE ORIGINALLY EXECUTED BETWEEN THE PARTIES HERETO ON 9-14-97

Together with all the rights, privileges, tenements, appurtenances and fixtures appertaining to the Real Estate, all of which shall be deemed Real
Estate, and shall be conveyed by this mortgage.

TO HAVE AND TO HOLD the Real Estate unto the Mortgagor, its successors and assigns forever. The Mortgagor covenants with the Mortgagee
that the Mortgagor is lawfully seized in fee simple of the Real Estate and has a good right to sell and convey the Real Estate as aforesaid; that the Real
Estate is free of all encumbrances, unless otherwise set forth above, and the Mortgagor will warrant and forever defend the title to the Real Estate unto
the Mortgagee, against the lawful claims of all persons.

For the purpose of further securing the payment of the Debt, the Mortgagor agrees to: (1) pay all taxes, assessments, and other liens taking priority
over this mortgage (hereinafter jointly called "Liens"), and if default is made in the payment of the Liens, or any part thereof, the Mortgagee, at its option,
may pay the same; (2) keep the Real Estate continuously insured, in such manner and with such companies as may be satisfactory to the Mortgagee,
against loss by fire, vandalism, malicious mischief and other perils usually covered by a fire insurance policy with standard extended coverage
endorsement, with loss, if any, payable to the Mortgagee, as its interest may appear; such insurance to be in an amount at least equal to the lesser of the
actual cash value of the improvements located on the Real Estate or the indebtedness secured by this mortgage on said improvements. (3) pay any other
cost or expense which will protect Mortgagee's security in the Real Estate and Mortgagee may, but is under no obligation to do so, make any advance
or pay any cost or incur any expense which Mortgagee feels will protect its security under this mortgage (whether or not any charge it pays is valid).

The Mortgagor hereby assigns and pledges to the Mortgagee, as further security for the payment of the Debt, each and every policy of hazard
insurance now or hereafter in effect which insures said improvements, or any part thereof, together with all the right, title and interest of the Mortgagor
in and to each and every such policy, including but not limited to all of the Mortgagor's right, title and interest in and to any premiums paid on such hazard
insurance, including all rights to return premiums. If the Mortgagor fails to keep the Real Estate insured as specified above then, at the election of the
Mortgagee and without notice to any person, the Mortgagee may declare the entire Debt due and payable and this mortgage subject to foreclosure, and
this mortgage may be foreclosed as hereinafter provided; and, regardless of whether the Mortgagee declares the entire Debt due and payable and this
mortgage subject to foreclosure, the Mortgagee may, but shall not be obligated to, insure the Real Estate for its full insurable value (or for such lesser
amount as the Mortgagee may wish) against such risks of loss, for its own benefit, the proceeds from such insurance (less cost of collecting same), if
collected, to be credited against the Debt, or, at the election of the Mortgagee, such proceeds may be used in repairing or reconstructing the improvements
located on the Real Estate. All amounts spent by the Mortgagee for insurance or for the payment of Liens or for the protection of its security, shall become
a debt due by the Mortgagor to the Mortgagee and at once payable, without demand upon or notice to the Mortgagor, and shall be secured by the lien
of this mortgage and shall bear interest from date of payment by the Mortgagee until paid at the Annual Percentage Rate set forth in the Building Contract
dated 10-21-97 between Jim Walter Homes, Inc. and the Mortgagor.

As further security for the payment of the Debt, the Mortgagor hereby assigns and pledges to the Mortgagee the following described property, rights,
claims, rents, profits, issues and revenues:

1. all rents, profits, issues, and revenues of the Real Estate from time to time accruing, whether under leases or tenancies now existing or hereafter created,
reserving to the Mortgagor, so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, profits, issues and revenues;

2. all judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Real Estate, or any
part thereof, under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Real Estate, or any part thereof,
or to any rights appurtenant thereto, including any award for change of grade of streets, and all payments for the voluntary sale of the Real Estate, or any
part thereof, in lieu of the exercise of the power of eminent domain. The Mortgagee is hereby authorized on behalf of, and in the name of, the Mortgagor
to execute and deliver valid acquittances for, and appeal from, any such judgments or awards. The Mortgagee may apply all such sums so received, or
any part thereof, after the payment of all the Mortgagee's expenses in connection with any proceeding or transaction described in this subparagraph 2,
including court costs and attorneys' fees, on the Debt in such manner as the Mortgagee elects, or, at the Mortgagee's option, the entire amount, or any
part thereof, so received may be released or may be used to rebuild, repair or restore any or all of the improvements located on the Real Estate.

The Mortgagor agrees to take good care of the Real Estate and all improvements located thereon and not to commit or permit any waste thereon,
and at all times to maintain such improvements in as good condition as they now are, reasonable wear and tear excepted.

JW 260 (Rev. 10/96)

EXHIBIT A

Notwithstanding any other provision of this mortgage or the note or notes evidencing the Debt, the debt shall become immediately due and payable, at the option of the Mortgagee, upon the conveyance of the Real Estate, or any part thereof or any interest therein.

The Mortgagee agrees that no delay or failure of the Mortgagee to exercise any option to declare the Debt due and payable shall be deemed a waiver of the Mortgagee's right to exercise such option, either as to any past or present default, and it is agreed that no terms or conditions contained in this mortgage may be waived, altered or changed except by a written instrument signed by the Mortgagor and signed on behalf of the Mortgagee by one of its officers.

After default on the part of the Mortgagor, the Mortgagee, upon bill filed or other proper legal proceeding being commenced for the foreclosure of this mortgage, shall be entitled to the appointment by any competent court, without notice of any party, of a receiver for the rents, issues, revenues and profits of the Real Estate, with power to lease and control the Real Estate, and with such other powers as may be deemed necessary.

UPON CONDITION, HOWEVER, that if the Mortgagor pays the Debt (which Debt includes the indebtedness evidenced by the promissory note or notes referred to hereinbefore and any and all extensions and renewals thereof and all interest on said indebtedness and on any and all such extensions and renewals and the Mortgagee for any amounts the Mortgagee has paid in payment of Liens or insurance premiums, and interest thereon, and fulfills all of its obligations under this mortgage, this conveyance shall be null and void. But if: (1) any warranty or representation made in this mortgage is breached or proves false in any material respect; (2) default is made in the due performance of any covenant or agreement of the Mortgagor under this mortgage; (3) default is made in the payment of the Mortgagee of any sum paid by the Mortgagee under the authority of any provision of this mortgage; (4) the Debt, or any part thereof, remains unpaid at maturity; (5) the interest of the Mortgagee in the Real Estate becomes endangered by reason of the enforcement of any prior lien or encumbrance thereon; (6) any statement of lien is filed against the Real Estate, or any part thereof, under the statutes of Alabama relating to the liens of mechanics and materialmen (without regard to the existence or nonexistence of the debt or the lien on which such statement is based); (7) any law is passed imposing or authorizing the imposition of any specific tax upon this mortgage or the Debt or permitting or authorizing the deduction of any such tax from the principal or interest of the Debt, or by virtue of which any tax, lien or assessment upon the Real Estate shall be chargeable against the owner of this mortgage; (8) any of the stipulations contained in this mortgage is declared invalid or inoperative by any court of competent jurisdiction; (9) Mortgagor, or any of them (a) shall apply for or consent to the appointment of a receiver, trustee or liquidator thereof or of the Real Estate or of all or a substantial part of such Mortgagor's assets, (b) be adjudicated a bankrupt or insolvent or file a voluntary petition in bankruptcy, (c)fail, or admit in writing such Mortgagor's inability generally, to pay such Mortgagor's debts as they come due, (d) make a general assignment for the benefit of creditors, (e) file a petition or an answer seeking reorganization or any arrangement with creditors or taking advantage of any insolvency law, or (f) file an answer admitting the material allegations of, or consent to, or default in answering, a petition filed against such Mortgagor in any bankruptcy, reorganization or insolvency proceedings; or (10) an order for relief or other judgment or decree shall be entered by any court of competent jurisdiction, approving a petition seeking liquidation or reorganization of the Mortgagor, or any of them if more than one, or appointing a receiver, trustee or liquidator of any Mortgagor or of the Real Estate or of all or a substantial part of the assets of any Mortgagor; then, upon the happening of any one or more of said events, at the option of the Mortgagee, the unpaid balance of the Debt shall at once become due and payable and this mortgage shall be subject to foreclosure and may be foreclosed as now provided by law in case of past-due mortgages; and the Mortgagee shall be authorized to take possession of the Real Estate and, after giving at least twenty-one days notice of the time, place and terms of sale by publication once a week for three consecutive weeks in some newspaper published in the county in which the Real Estate is located, to sell the Real Estate in front of the courthouse door of said county, at public outcry, to the highest bidder for cash, and to apply the proceeds of said sale as follows: first, to the expense of advertising, selling and conveying the Real Estate and foreclosing this mortgage, including a reasonable attorney's fee; second, to the payment of any amounts that have been spent, or that it may then be necessary to spend, in paying insurance premiums, Liens or encumbrances, with interest thereon; third, to the payment in full of the balance of the Debt whether the same shall or shall not have fully matured at the date of said sale, but no interest shall be collected beyond the day of sale; and fourth, the balance, if any, to be paid to the party or parties appearing of record as the owner of the Real Estate at the time of the sale, after deducting the cost of ascertaining who is such owner. The Mortgagee agrees that the Mortgagee may bid at any sale had under the terms of this mortgage and may purchase the Real Estate if the highest bidder therefor. At the foreclosure sale the Real Estate may be offered for sale and sold as a whole without first offering it in any other manner or it may be offered for sale and sold in any other manner the Mortgagee may elect.

The Mortgagor agrees to pay all costs, including reasonable attorneys' fees not exceeding 15% of the unpaid debt after default and referral for collection to an attorney not a salaried employee of the Mortgagee, incurred by the Mortgagee in collecting or securing or attempting to collect or secure the Debt, or any part thereof, or in defending or attempting to defend the priority of this mortgage against any lien or encumbrance on the Real Estate, unless this mortgage is herein expressly made subject to any such lien or encumbrance; and/or all costs incurred in the foreclosure of this mortgage, either under the power of sale contained herein, or by virtue of the decree of any court of competent jurisdiction. The full amount of such costs incurred by the Mortgagee shall be a part of the Debt and shall be secured by this mortgage. The purchaser at any such sale shall be under no obligation to see to the proper application of the purchase money. In the event of a sale hereunder, the Mortgagee, or the owner of the Debt and mortgage, or auctioneer, shall execute to the purchaser, for and in the name of the Mortgagor, a statutory warranty deed to the Real Estate.

For each installment not paid within fifteen (15) days of its scheduled due date the Mortgagor agrees to pay the Mortgagee a late charge of five percent (5%) of the unpaid amount of the instrument in default or $.50, whichever is greater, not to exceed $100.

If any check tendered to Mortgagee or its assigns by Mortgagor hereunder is not paid upon presentation or is dishonored by the bank or depository institution upon which it is drawn, Mortgagor agrees to pay Mortgagee a bad check charge of $20.00 or the charge made by the depository institution for the return of the unpaid or dishonored instrument, whichever is greater, in accordance with Ala. Code (1975) §8-8-15.

Plural or singular words used herein to designate the undersigned shall be construed to refer to the maker or makers of this mortgage, whether one or more natural persons, corporations, associations, partnerships or other entities. All covenants and agreements herein made by the undersigned shall bind the heirs, personal representatives, successors and assigns of the undersigned; and every option, right and privilege herein reserved or secured to the Mortgagee, shall inure to the benefit of the Mortgagee's successors and assigns.

In witness whereof, the undersigned Mortgagor has (have) executed this instrument on this 21st day of October, 19 97.

_____

Kay Drughler

Mary F. Johnson

State of Alabama
County of St Clair

89706481/B MTG
11/20/1997
Wallace Wyatt, Jr., Judge of Probate

01:04P_

I, the undersigned authority, a Notary Public, in and for said county in said state, hereby certify that _____ whose name (s) is (are) signed to the foregoing instrument, and who is (are) known to me, acknowledged before me on this day that, being informed of the contents of said instrument, _____ executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this 21st day of October, 19 97.

_____
Paul F. Biblin
Notary Public

My commission expires:
MY COMMISSION EXPIRES 10-16-2002

NOTARY MUST AFFIX SEAL

RETURN TO:
JIM WALTER HOMES, INC.
P. O. BOX 31601
TAMPA, FLORIDA 33631-3601

025/026    **EXHIBIT A**

EXHIBIT "E"

ROGER D. JOHNSON
ST. CLAIR COUNTY, ALABAMA

B9706481 8 MTG
11/20/1997                            01:04P
Wallace Wyatt Jr, Judge of Probate

State of Alabama:

To All Interested Parties:

St. Clair County:

I, Charles V. Maxwell, a registered land surveyor of the State of Alabama, do hereby certify to the best of my knowledge, information and belief, and in my professional opinion, that this is a true and correct survey of a parcel of land located in the Northeast 1/4 of the Southwest 1/4 of Section 9, Township 17 South, Range 2 East, St. Clair County, Alabama, being more particularly described as follows:

Commencing at the Southeast corner of the Northeast 1/4 of the Southwest 1/4 of Section 9, Township 17 South, Range 2 East, said point being a found axle; thence North 02 degrees 27 minutes East along the East line of said 1/4-1/4, a distance of 211.62 feet to a found iron pin; thence North 74 degrees 12 minutes West, a distance of 211.36 feet to an iron pin, said pin being the Point of Beginning of the herein described parcel; thence continue North 74 degrees 12 minutes West, a distance of 212.38 feet to a found iron pin; thence South 12 degrees 45 minutes West, a distance of 92.54 feet to a found iron pin; thence South 74 degrees 39 minutes West, a distance of 251.71 feet to a found iron pin on the Easterly Right of Way of Winneteska Road; thence North 07 degrees 33 minutes West along said Easterly Right of Way, a distance of 128.65 feet to a point; thence North 09 degrees 04 minutes West along said Easterly Right of Way, a distance of 112.86 feet to a point; thence North 10 degrees 47 minutes West along said Easterly Right of Way, a distance of 97.85 feet to an iron pin; thence North 86 degrees 49 minutes East, a distance of 519.47 feet to an iron pin; thence South 00 degrees 00 minutes East, a distance of 254.99 feet to the Point of Beginning of the above described parcel. Said parcel contains 3.00 Acres more or less. This is a survey of a portion of the property described in Deed Book 178, Page 331, recorded in the Judge of Probate Office, St. Clair County (Pell City), Alabama.

I certify that all parts of this survey and drawing have been completed in accordance with the requirements of the minimum technical standards for the practice of land surveying in the State of Alabama.

That survey was performed by me the 3rd day of October, 1997. This is the 6th day of October 1997.

St. Clair County, AL
Wallace Wyatt Jr, Judge of Probate
Rcrd 11/20/1997
Deed Tax = $0.00
Mortgage Tax = $104.25
Recording = $14.00

Charles V. Maxwell
AL Reg. #16672

026/026

**EXHIBIT A**

EXHIBIT

E

THIS INSTRUMENT PREPARED BY:  William J. Brower, Attorney
P.O. Box 130249
Birmingham, AL 35213

# FORECLOSURE DEED

2001   1755
Recorded in the Above
DEED Book & Page
03-07-2001 09:34:07 AM
Wallace Wyatt Jr - Probate Judge
St. Clair County, Alabama

STATE OF ALABAMA

ST. CLAIR   COUNTY

KNOW ALL MEN BY THESE PRESENTS, That, whereas, heretofore on, to-wit: October 21, 1997
Roger D. Johnson & Mary Johnson Husband & wife
executed a certain mortgage on the property hereinafter described to Jim Walter Homes, Inc.

which said mortgage is recorded in BOOK S9706481 , PAGE , in the Probate Office of St. Clair
County, Alabama; and,

WHEREAS, in and by said mortgage the mortgagee was authorized and empowered in case of default in the payment of the indebtedness thereby secured, according to the terms thereof, to sell said property before the courthouse door of said County, giving notice of the time, place, and terms of said sale in some newspaper published in said County, by publication once a week for 3   consecutive weeks prior to said sale at public outcry for cash, to the highest bidder, and said mortgage provided that in case of sale under the power and authority contained in same, the mortgagee or any person conducting said sale for the mortgagee was authorized to execute title to the purchaser at said sale; and it was further provided in and by said mortgage that the mortgagee may bid at the sale and purchase said property if the highest bidder therefore; and,

WHEREAS, said mortgage with the powers therein contained was duly assigned to William J. Wade, not in his individual capacity, but solely  as trustee of Mid-State Trust VII, a Delaware Business Trust and,

WHEREAS, default was made in the payment of the indebtedness secured by said mortgage, and the said assignee did declare all of the indebtedness secured by said mortgage due and payable and said mortgage subject to foreclosure as therein provided and did give due and proper notice of the foreclosure of said mortgage by publication in the St. Clair News-Aegis County, Alabama, and of general circulation in  St. Clair a newspaper published in  St. Clair
County, Alabama in its issues of 2/8/01, 2/15/01, 2/22/01 and,

WHEREAS, on February 28 , 20 01 , the day on which the foreclosure was due to be held under the terms of said notice, between the legal hours of sale, said foreclosure was duly and properly conducted, and William J. Wade, not in his individual capacity, but solely as trustee of Mid-State Trust VII, a Delaware Business Trust, as assignee of said mortgage, did offer for sale and sell at public outcry in front of the door of the courthouse in St. Clair (Pell City) County, Alabama, the property hereinafter described; and,

WHEREAS, William J. Brower  was the Auctioneer who conducted said foreclosure sale and was the person conducting said sale for the assignee, William J. Wade, not in his individual capacity,  but solely  as a trustee of Mid-State Trust VII, a Delaware Business Trust, and,

WHEREAS, the highest and best bid for the property described in the aforementioned mortgage was the bid of William J. Wade, not in his individual capacity, but solely  as trustee of Mid-State Trust VII, a Delaware Business Trust, in the amount of Seventy two thousand three hundred thirteen & 68/100------------------------------ Dollars, which sum of money William J. Wade, not in his individual capacity, but solely  as trustee of Mid-State Trust VII, a Delaware Business Trust, offered to credit on the indebtedness secured by said mortgage and said property was thereupon sold to William J. Wade, not in his individual capacity, but solely as trustee of Mid-State Trust VII, a Delaware Business Trust;

NOW THEREFORE, in consideration of the premises and of a credit in the amount of $ 72,313.68
on the indebtedness secured by said mortgage, the said William J. Wade, not in his individual capacity, but solely as trustee of Mid-State Trust VII, a Delaware Business Trust by and through William J. Brower  as Auctioneer conducting said sale and as attorney in fact for William J. Wade, not in his individual capacity,  but solely as trustee of Mid-State Trust VII, a  Delaware Business Trust and the said William J. Brower, as Auctioneer conducting said sale, do hereby GRANT, BARGAIN, SELL AND CONVEY unto the said William J. Wade, not in his individual capacity, but solely  as trustee of Mid-State Trust VII, a Delaware Business Trust, the following described property situated in St. Clair County, Alabama, to-wit:

See exhibit "A" attached

EXHIBIT A

TO HAVE AND TO HOLD THE above described property unto William J. Wade, not in his individual capacity, but solely as trustee of Mid-State Trust VII, a Delaware Business Trust, P.O. Box 31601, Tampa, Florida, 33631, its heirs and assigns forever, subject however, to the statutory right of redemption on the part of those entitled to redeem as provided by the laws of the State of Alabama.

IN WITNESS WHEREOF William J. Wade, not in his individual capacity, but solely as trustee of Mid-State Trust VII, a Delaware Business Trust has caused this instrument to be executed by and through William J. Brower as Auctioneer conducting this said sale, and as attorney in fact, and William J. Brower as Auctioneer conducting said sale has hereto act his hand and seal on this the 28th day of February ,2001 .

By _William J Brower_____

William J. Brower  as, Auctioneer
and Attorney in Fact

_William J Brower_____

William J. Brower  as, Auctioneer
conducting said sale

STATE OF ALABAMA
Jefferson COUNTY

I, the undersigned, a Notary Public in and for said County and State, hereby certify that William J. Brower, whose name as Auctioneer and Attorney in Fact for William J. Wade, not in his individual capacity, but solely as trustee of Mid-State Trust VII, a Delaware Business Trust, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that being informed of the contents of the conveyance, he, in his capacity as said Auctioneer and Attorney in Fact, with full authority executed the same voluntarily on the day the same bears date.

Given under my hand and official seal on this the 28 day of February ,2001.

_____
Notary Public

NOTARY PUBLIC STATE OF ALABAMA
MY COMMISSION EXPIRES Feb 17, 2004
BONDED THRU NOTARY PUBLIC UNDERWRITERS

RETURN TO:
   Narred & Brower
   P.O. Box 150249
   Birmingham, AL 35213

2001   1756
Recorded in the Above
DEED  Book & Page
03-07-2001 09:34:07 AM

**EXHIBIT A**

Commencing at the Southeast corner of the Northeast 1/4 of the
Southwest 1/4 of Section 9, Township 17 South, Range 2 East, said
point being a found axial thence North 02 degrees 27 minutes East
along the East line of said 1/4-1/4, a distance of 211.52 feet to
a found iron pin; thence North 74 degrees 12 minutes West, a
distance of 211.36 feet to an iron pin, said pin being the Point of
Beginning of the herein described parcel; thence continue North 74
degrees 12 minutes West, a distance of 212.38 feet to a found iron
pin; thence South 12 degrees 46 minutes West, a distance of 93.84
feet to a found iron pin; thence South 74 degrees 39 minutes West,
a distance of 251.71 feet to a found iron pin on the Easterly Right
of Way of Minnetaska Road; thence North 07 degrees 33 minutes East
along said Easterly Right of Way, a distance of 120.65 feet to a
point; thence North 09 degrees 04 minutes West along said Easterly
Right of Way, a distance of 117.86 feet to a point; thence North 10
degrees 47 minutes West along said Easterly Right of Way, a
distance of 87.85 feet to an iron pin; thence North 86 degrees 49
minutes East, a distance of 519.47 feet to an iron pin; thence
South 00 degrees 00 minutes East, a distance of 254.99 feet to the
Point of Beginning of the above described parcel; said parcel
contains 3.00 Acres more or less. This is a survey of a portion of
the property described in Deed Book 170, Page 331, recorded in the
Judge of Probate Office, St. Clair County (Pell City), Alabama.

Exhibit "A"

2001   1757
Recorded in the Above
DEED  Book & Page
03-07-2001 09:34:07 AM
Wallace Wyatt Jr - Probate Judge
St. Clair County, Alabama
Book/Ps: 2001/1755
Term/Cashier: S RECORD1 / LeeD
Tran: 808,12568,18765
Recorded: 03-07-2001 09:35:25

CER Certification Fee      1.00
PJF Special Index Fee      5.50
REC Recording Fee          9.00
Total Fees:  $ 15.50

EXHIBIT A

SALES PRICE : $    6  0.00
DOWNPAYMENT : $     30.00
AMT FINANCED : $   67,000.00
TIME CHARGES: $   80,264.00
TIME PRICE : $  147,264.00

#0922U5

EXHIBIT

**F**

2001   4177
Recorded in the Above
DEED Book & Page
05-01-2001  03:24:18 PM
Wallace Wyatt Jr - Probate Judge
St. Clair County, Alabama

## ALABAMA
## SPECIAL WARRANTY DEED

THIS INDENTURE, Made this ___3rd___ day of ___April___, XX2001,
BETWEEN Jim Walter Homes, Inc.* a corporation existing under the laws of the State of
Florida, having its principal place of business at 1500 North Dale Mabry Highway, Tampa,
Florida 33607 and William J. Wade, not in his individual capacity but solely as trustee of Mid-
State Trust VII, a Delaware business trust established pursuant to a Trust Agreement dated as of
December 10, 1998, with an address of William J. Wade, c/o Richards, Layton & Finger, One
Rodney Square, Wilmington, Delaware, 19890, Attention: Corporate Trust Department,
hereinafter, collectively, the party of the first part, and **Thomas Holloway & wife Terri L. Wilson **
As joint tenants with full rights of survivorship not as tenants in common
___5808 Mt. Olive Road    Gardendale, AL 35071___
of the County of ___ST. CLAIR___ and State of Alabama, part_ies_ of the second
part, WITNESSETH, that the said party of the first part, for and in consideration of the sum of
----$10.00-TEN AND OTHER VALUABLE CONSIDERATIONS------------------------Dollars,
to it in hand paid, the receipt whereof is hereby acknowledged, has granted, bargained, sold,
aliened, remised, released, conveyed and confirmed, and by these presents doth grant, bargain,
sell, alien, remise, release, convey and confirm unto said part_ies_ of the second part, and
___their___ heirs and assigns forever, all that certain parcel of land lying and being in the
County of ___ST. CLAIR___ and State of Alabama, more particularly described on
Exhibit A attached hereto and made a part hereof.

TOGETHER with all the tenements, hereditaments and appurtenances, with every
privilege, right, title, interest and estate, reversion, remainder and easement thereto belonging or
in anywise appertaining; TO HAVE AND TO HOLD the same in fee simple forever.

And the said party of the first part doth covenant with the said part_ies_ of the second part
that it is lawfully seized of the said premises; that they are free of all encumbrances, and that it
has good right and lawful authority to sell the same; and the said party of the first part does
hereby fully warrant the title to said land, and will defend the same against the lawful claims of
all persons whomsoever by, through and under the party of the first part, but not otherwise.

IN WITNESS WHEREOF, the party of the first part has caused these presents to be signed
in their names by ___Lane Hudson___ Vice-President
of Jim Walter Homes, Inc., for that company both individually and as Attorney-in-Fact for
William J. Wade, trustee, the day and year above written.

* GRANTOR
**GRANTEE

JIM WALTER HOMES, INC.

By:
Name: LANE HUDSON
Title: Vice-President

William J. Wade, not in his individual capacity, but solely
as trustee of Mid-State Trust VII

By: Jim Walter Homes, Inc., his Attorney-in-Fact

By:
Name: LANE HUDSON
Title: Vice-President

RETURN TO
JIM WALTER HOMES, INC.
ATTN: P.O.P. PANGANIBAN
P.O. BOX 31601
TAMPA, FL 33631-3601

1

**EXHIBIT A**

```
2001   4178
Recorded in the Above
DEED Book & Page
06-01-2001  03:24:18 PM
```

## ACKNOWLEDGMENT

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

BE IT REMEMBERED that on this day before me, a Notary Public within and for the county and state aforesaid, duly authorized, acting and commissioned, personally appeared __Lane Hudson__, to me personally well known, who acknowledged that he/xxx is the __Vice-President__ of Jim Walter Homes, Inc., a corporation, and that as such officer being authorized so to do, had executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by himself/herxxxx as such officer.

WITNESS my hand and official seal as such Notary Public on this the __3rd__ day of __April__, xx 2001.

_Sandra M. Self_
NOTARY PUBLIC
Print Name: SANDRA M. SELF
My Commission Expires:

> Sandra M Self
> My Commission CC682820
> Expires October 24, 2001

## ACKNOWLEDGMENT

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

I, the undersigned authority, a Notary Public in and for said County, in said State, hereby certify that __Lane Hudson__, whose name as __Vice-President__ of Jim Walter Homes, Inc., a corporation, as Attorney-in-Fact for William J. Wade, not in his individual capacity but solely as Trustee of Mid-State Trust VII, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of this instrument, he, as such officer and with full authority, executed the same voluntarily for and as an act of said corporation, acting in its capacity as aforesaid.

WITNESS my hand and official seal as such Notary Public on this the __3rd__ day of __April__, xx 2001.

_Sandra M. Self_
NOTARY PUBLIC
Print Name: SANDRA M. SELF
My Commission Expires:

> Sandra M Self
> My Commission CC682820
> Expires October 24, 2001

THIS INSTRUMENT PREPARED BY:
Jeffrey P. Thofner
Attorney at Law
P. O. Box 31601
Tampa, FL 33631-3601

TEP-T-3.VII (1/99)

AFTER RECORDING RETURN TO:
Jim Walter Homes, Inc.
P. O. Box 31601
Tampa, FL 33631-3601
Attn: C. T. Witherington

2

**EXHIBIT A**

COUNTY OF ST. CLAIR                    EXHIBIT "A"
STATE OF ALABAMA

Commencing at the Southeast corner of the Northeast ¼ of the Southwest ¼ of
Section 9, Township 17 South, Range 2 East, said point being a found axle; thence
North 02 degrees 27 minutes East along the East line of said ¼-¼, a distance of
211.62 feet to a found iron pin; thence North 74 degrees 12 minutes West, a
distance of 211.36 feet to an iron pin, said pin being the Point of Beginning of the
herein described parcel; thence continue North 74 degrees 12 minutes West, a
distance of 212.38 feet to a found iron pin; thence South 12 degrees 45 minutes
West, a distance of 92.54 feet to a found iron pin; thence South 74 degrees 39
minutes West, a distance of 251.71 feet to a found iron pin on the Easterly Right of
Way of Winnataska Road; thence North 07 degrees 33 minutes West along said
Easterly Right of Way, a distance of 128.65 feet to a point; thence North 09 degrees
04 minutes West along said Easterly Right of Way, a distance of 112.86 feet to a
point; thence North 10 degrees 47 minutes West along said Easterly Right of Way, a
distance of 87.85 feet to an iron pin; thence North 86 degrees 49 minutes East, a
distance of 519.47 feet to an iron pin; thence South 00 degrees 00 minutes East, a
distance of 254.99 feet to the Point of Beginning of the above described parcel. Said
parcel contains 3.00 Acres more or less.

```
2001  4179
Recorded in the Above
DEED  Book & Page
06-01-2001 03:24:18 PM
```

Less and except any road right of ways of record. Grantor does not assume
any liability for unpaid taxes.

This deed is given subject to that certain Mortgage from the Grantee herein
to the Grantor herein dated the 3rd day of April, 2001.

A Purchase Money Mortgage is being recorded simultaneously herewith to
secure the deferred payment indebtedness.

PARCEL #:  592702090000038007

**EXHIBIT A**

02/17/2004   14:45   8138714050                WMS

EXHIBIT

G

SALES PRICE : $   67,750.00
DOWNPAYMENT : $      750.00
AMT FINANCED : $  67,000.00
TIME CHARGES : $  80,264.00
TIME PRICE : $   147,264.00

MORTGAGE
WILLIAM J. WADE, TRUSTEE
RESALE OF MARY JOHNSON #552423   2001   16582

STATE OF ALABAMA
County of St. Clair

Recorded in the Above
MORTGAGE Book & Page
06-01-2001 03:44:31 PM
Wallace Wade Jr - Probate Judge

THIS INDENTURE is made and entered into this __3__ day of __April__ and between __Thomas Holloway & Terri L Wilson   H/W__ (hereinafter called "Mortgagor", whether one or more) and William J. Wade, not in his individual capacity but solely as trustee of Mid-State Trust _VII_, a Delaware business trust with an address of c/o Richards, Layton & Finger, Rodney Square North, Wilmington, Delaware 19890, Attention: William J. Wade, and JIM WALTER HOMES, INC., 1500 North Dale Mabry Hwy, Tampa, Florida 33607, (hereinafter collectively called "Mortgagee").

WHEREAS, __Thomas Holloway & Terri L Wilson   H/W__ is (are) justly indebted to the Mortgagee in the sum of __ONE Hundred Forty Seven Thousand Two Hundred Sixty Four__ Dollars ($ __147,264.00__ ) as evidenced by that certain promissory note of even date herewith, which is payable in accordance with its terms, and which has a final maturity date of __May 5__ __2021__

NOW, THEREFORE, in consideration of the premises, and to secure the payment of the debt evidenced by said note and any and all extensions and renewals thereof, or of any part thereof (the aggregate amount of such debt, including any extensions and renewals, is hereinafter collectively called "Debt") and the compliance with all the stipulations herein contained, the Mortgagor does hereby grant, bargain, sell and convey unto the Mortgagee, the following described real estate, situated in __ST CLAIR__ County, Alabama (said real estate being hereinafter called "Real Estate":

See Exhibit "B" attached.

THIS INSTRUMENT PREPARED BY
Thomas E. Portsmouth, Attorney
P. O. Box 31601
Tampa, Florida 33631-3601

RETURN TO
JIM WALTER HOMES, INC.
ATT: LILLIAN P. PANGANIBAN
P.O. BOX 31601
TAMPA, FL 33631-3601

892205

Together with all the rights, privileges, tenements, appurtenances and fixtures appertaining to the Real Estate, all of which shall be deemed Real Estate and shall be conveyed by this mortgage.

TO HAVE AND TO HOLD the Real Estate unto the Mortgagee, its successors and assigns forever. The Mortgagor covenants with the Mortgagee that the Mortgagor is lawfully seized in fee simple of the Real Estate and has a good right to sell and convey the Real Estate as aforesaid; that the Real Estate is free of all encumbrances, unless otherwise set forth above, and the Mortgagor will warrant and forever defend the title to the Real Estate unto the Mortgagee, against the lawful claims of all persons.

For the purpose of further securing the payment of the Debt, the Mortgagor agrees to: (1) pay all taxes, assessments, and other liens taking priority over this mortgage (hereinafter jointly called "Liens"), and if default is made in the payment of the Liens, or any part thereof, the Mortgagee, at its option, may pay the same; (2) keep the Real Estate continuously insured, in such manner and with such companies as may be satisfactory to the Mortgagee, against loss by fire, vandalism, malicious mischief and other perils usually covered by a fire insurance policy with standard extended coverage endorsement, with loss, if any, payable to the Mortgagee, as its interest may appear; such insurance to be in an amount at least equal to the lesser of the actual cash value of the improvements located on the Real Estate or the indebtedness secured by this mortgage on said improvements; (3) pay any other taxes or expenses which will protect Mortgagee's security in the Real Estate and Mortgagee may, but is under no obligation to do so, make any advance or pay any cost of incurring expense which Mortgagee feels will protect its security under this mortgage (whether or not any charge it pays is valid).

The Mortgagor hereby assigns and pledges to the Mortgagee, as further security for the payment of the Debt, each and every policy of hazard insurance now or hereafter in effect which insures said improvements, or any part thereof, together with all the right, title and interest of the Mortgagor in and to each and every such policy, including but not limited to all of the Mortgagor's right, title and interest in and to any premiums paid on such hazard insurance, including all rights to return premiums. If the Mortgagor fails to keep the Real Estate insured as specified above then, at the election of the Mortgagee and without notice to any person, the Mortgagee may declare the entire Debt due and payable and this mortgage subject to foreclosure, and this mortgage may be foreclosed as hereinafter provided; and, regardless of whether the Mortgagee declares the entire Debt due and payable and this mortgage subject to foreclosure, the Mortgagee may, but shall not be obligated to, insure the Real Estate for its full insurable value (or for such lesser amount as the Mortgagee may wish) against such risks of loss, for its own benefit, the proceeds from such insurance (less cost of collecting same), if collected, to be credited against the Debt, or, at the election of the Mortgagee, such proceeds may be used in repairing or reconstructing the improvements located on the Real Estate. All amounts spent by the Mortgagee for insurance or for the payment of Liens or for the protection of its security, shall become a debt due by the Mortgagor to the Mortgagee and at once payable, without demand upon or notice to the Mortgagor, and shall be secured by the lien of this mortgage and shall bear interest from date of payment by the Mortgagee until paid at the Annual Percentage Rate set forth in the Sale Contract dated __4/5/01__ between Mortgagee and the Mortgagor.

As further security for the payment of the Debt, the Mortgagor hereby assigns and pledges to the Mortgagee the following described property, rights, claims, rents, profits, issues and revenues:

1. all rents, profits, issues, and revenues of the Real Estate from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving to the Mortgagor, so long as the Mortgagor is not in default hereunder, the right to receive and retain such rents, profits, issues and revenues;

2. all judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Real Estate, or any part thereof, under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Real Estate, or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets, and all payments for the voluntary sale of the Real Estate, or any part thereof, in lieu of the exercise of the power of eminent domain. The Mortgagee is hereby authorized on behalf of, and in the name of, the Mortgagor to execute and deliver valid acquittances for, and appeal from, any such judgments or awards. The Mortgagee may apply all such sums so received, or any part thereof, after the payment of all the Mortgagee's expenses in connection with any proceeding or transaction described in this subparagraph 2, including court costs and attorneys' fees, on the Debt in such manner as the Mortgagee elects, or, at the Mortgagee's option, the entire amount, or any part thereof, so received may be released or may be used to rebuild, repair or restore any or all of the improvements located on the Real Estate.

The Mortgagor agrees to take good care of the Real Estate and all improvements located thereon and not to commit or permit any waste thereon, and at all times to maintain such improvements in as good condition as they now are, reasonable wear and tear excepted.

MRT #043 (1/00) Resale

EXHIBIT A

Notwithstanding any other provision of this mortgage or the note or notes evidencing the Debt, the Debt shall become immediately due and payable, at the option of the Mortgagee, upon the conveyance of the Real Estate, or any part thereof or any interest therein.

The Mortgagor agrees that no delay or failure of the Mortgagee to exercise any option to declare the Debt due and payable shall be deemed a waiver of the Mortgagee's right to exercise such option, either as to any past or present default, and it is agreed that no terms or conditions contained in this mortgage may be waived, altered or changed except by a written instrument signed by the Mortgagor and signed on behalf of the Mortgagee by one of its officers.

After default on the part of the Mortgagor, the Mortgagee, upon bill filed or other proper legal proceeding being commenced for the foreclosure of this mortgage, shall be entitled to the appointment by any competent court, without notice to any party, of a receiver for the rents, issues, revenues and profits of the Real Estate, with power to lease and control the Real Estate, and with such other powers as may be deemed necessary.

UPON CONDITION, HOWEVER, that if the Mortgagor pays the Debt (which Debt includes the indebtedness evidenced by the promissory note or notes referred to hereinbefore and any and all extensions and renewals thereof and all interest on any indebtedness and on any and all such extensions and renewals) and reimburses the Mortgagee for any amounts the Mortgagee has paid in payment of Liens or insurance premiums, and interest thereon, and fulfills all of its obligations under this mortgage, this conveyance shall be null and void. But if: (1) any warranty or representation made in this mortgage is breached or proves false in any material respect; (2) default is made in the due performance of any covenant or agreement of the Mortgagor under this mortgage; (3) default is made in the payment of the Mortgagee of any sum paid by the Mortgagee under the authority of any provision of this mortgage; (4) the Debt, or any part thereof, remains unpaid at maturity; (5) the interest of the Mortgagee in the Real Estate becomes endangered by reason of the enforcement of any prior lien or encumbrance thereon; (6) any statement of lien is filed against the Real Estate, or any part thereof, under the statutes of Alabama relating to the liens of mechanics and materialmen (without regard to the existence or nonexistence of the debt or the lien on which such statement is based); (7) any law is passed imposing or authorizing the imposition of any specific tax upon this mortgage or the Debt or permitting or authorizing the deduction of any such tax from the principal or interest of the Debt, or by virtue of which any tax, lien or assessment upon the Real Estate shall be chargeable against the owner of this mortgage; (8) any of the stipulations contained in this mortgage is declared invalid or inoperative by any court of competent jurisdiction; (9) Mortgagor, or any of them (a) shall apply for or consent to the appointment of a receiver, trustee or liquidator thereof or of the Real Estate or of all or a substantial part of such Mortgagor's assets, (b) be adjudicated a bankrupt or insolvent or file a voluntary petition in bankruptcy, (c) fail, or admit in writing such Mortgagor's inability generally, to pay such Mortgagor's debts as they come due, (d) make a general assignment for the benefit of creditors, (e) file a petition or an answer seeking reorganization or an arrangement with creditors or taking advantage of any insolvency law, or (f) file an answer admitting the material allegations of, or consent to, or default in answering, a petition filed against such Mortgagor in any bankruptcy, reorganization or insolvency proceedings; or (10) an order for relief or other judgment or decree shall be entered by any court of competent jurisdiction, approving a petition seeking liquidation or reorganization of the Mortgagor, or any of them if more than one, or appointing a receiver, trustee or liquidator of any Mortgagor or of the Real Estate or of all or a substantial part of the assets of any Mortgagor; then, upon the happening of any one or more of said events, at the option of the Mortgagee, the unpaid balance of the Debt shall at once become due and payable and this mortgage shall be subject to foreclosure and may be foreclosed as now provided by law in case of past-due mortgages; and the Mortgagee shall be authorized to take possession of the Real Estate and, after giving at least twenty-one days notice of the time, place and terms of sale by publication once a week for three consecutive weeks in some newspaper published in the county in which the Real Estate is located, to sell the Real Estate in front of the courthouse door of said county, at public outcry, to the highest bidder for cash, and to apply the proceeds of said sale as follows: first, to the expense of advertising, selling and conveying the Real Estate and foreclosing this mortgage, including a reasonable attorney's fee; second, to the payment of any amounts that have been spent, or that it may then be necessary to spend, in paying insurance premiums, Liens or encumbrances, with interest thereon; third, to the payment in full of the balance of the Debt whether the same shall or shall not have fully matured at the date of said sale, but no interest shall be collected beyond the day of sale; and fourth, the balance, if any, to be paid to the party or parties appearing of record to be the owner of the Real Estate at the time of the sale, after deducting the cost of ascertaining who is such owner. The Mortgagor agrees that the Mortgagee may bid at any sale had under the terms of this mortgage and may purchase the Real Estate if the highest bidder therefor. At the foreclosure sale the Real Estate may be offered for sale and sold as a whole without first offering it in any other manner or it may be offered for sale and sold in any other manner the Mortgagee may elect.                                                     2001  18583

For each installment not paid in full within fifteen (15) days after its scheduled due date, the Mortgagee or its assigns, a late charge of five percent (5%) of the unpaid amount of the installment in default or $5.00, whichever is greater, will be collected by the Mortgagee, or its assigns, by Mortgagor in payment of any sum owed hereunder is not paid or is dishonored by the bank or other depository institution upon which it is drawn, Mortgagor agrees to pay Mortgagee a bad check charge of $20.00 or the actual charge made by the depository institution for the return of the unpaid or dishonored instrument, whichever is greater, in accordance with Ala. Code (1975) § 8-8-15.

The Mortgagor agrees to pay all costs, including reasonable attorneys' fees not exceeding 15% of the unpaid debt after default and referral for collection to an attorney not a salaried employee of the Mortgagee, incurred by the Mortgagee in collecting or securing or attempting to collect or secure the Debt, or any part thereof, or in defending or attempting to defend the priority of this mortgage against any lien or encumbrance on the Real Estate, unless this mortgage is herein expressly made subject to any such lien or encumbrance; and/or all costs incurred in the foreclosure of this mortgage, either under the power of sale contained herein, or by virtue of the decree of any court of competent jurisdiction. The full amount of such costs incurred by the Mortgagee shall be a part of the Debt and shall be secured by this mortgage. The purchaser at any such sale shall be under no obligation to see to the proper application of the purchase money. In the event of a sale hereunder, the Mortgagee, or the owner of the Debt and mortgage, or auctioneer, shall execute to the purchaser, for and in the name of the Mortgagor, a statutory warranty deed to the Real Estate.

Plural or singular words used herein to designate the undersigned shall be construed to refer to the maker or makers of this mortgage, whether one or more natural persons, corporations, associations, partnerships or other entities. All covenants and agreements herein made by the undersigned shall bind the heirs, personal representatives, successors and assigns of the undersigned; and every option, right and privilege herein reserved or secured to the Mortgagee, shall inure to the benefit of the Mortgagee's successors and assigns.

In witness whereof, the undersigned Mortgagor has (have) executed this instrument on the ___3___ day of ___April___, 200_1_.

                                    x _Thomas Holloway_

                                    x _Terri L. Wilson_

State of Alabama

County of  _CALHOUN_

I, the undersigned authority, a Notary Public, in and for said county in said state, hereby certify that _Thomas Holloway & Terri L. Wilson_ whose name (s) is (are) signed to the foregoing instrument, and who is (are) known to me, acknowledged before me on this day that, being informed of the contents of said instrument, _T he √_ executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this ___3___ day of ___April___, 20 _01_.

                                    _____
                                        Notary Public

My commission expires:

_9-26-2004_
                        NOTARY MUST AFFIX SEAL

**EXHIBIT A**

# EXHIBIT B   892205

Commencing at the Southeast corner of the Northeast ¼ of the Southwest ¼ of Section 9, Township 17 South, Range 2 East, said point being a found axle; thence North 02 degrees 27 minutes East along the East line of said ¼-¼, a distance of 211.62 feet to a found iron pin; thence North 74 degrees 12 minutes West, a distance of 211.36 feet to an iron pin, said pin being the Point of Beginning of the herein described parcel; thence continue North 74 degrees 12 minutes West, a distance of 212.38 feet to a found iron pin; thence South 12 degrees 45 minutes West, a distance of 92.54 feet to a found iron pin; thence South 74 degrees 39 minutes West, a distance of 251.71 feet to a found iron pin on the Easterly Right of Way of Winnataska Road; thence North 07 degrees 33 minutes West along said Easterly Right of Way, a distance of 128.65 feet to a point; thence North 09 degrees 04 minutes West along said Easterly Right of Way, a distance of 112.86 feet to a point; thence North 10 degrees 47 minutes West along said Easterly Right of Way, a distance of 87.85 feet to an iron pin; thence North 86 degrees 49 minutes East, a distance of 519.47 feet to an iron pin; thence South 00 degrees 00 minutes East, a distance of 254.99 feet to the Point of Beginning of the above described parcel. Said parcel contains 3.00 Acres more or less.

_____          _____ 4/3/01
Witness                                   Buyer

                                          _____ 4/3/01
                                          Buyer

2001  18584
Recorded in the Above
MORTGAGE  Book & Page
06-21-2001  03:41:51 PM
Wallace Wyatt Jr - Probate Judge
St. Clair County, Alabama
Book/Pg: 2001/18582
Term/Cashier: $ RECORD01 / Leed
Trans: 990.15892.23640
Recorded: 06-21-2001 15:42:17
CER Certification Fee                 1.00
MTG Mortgage Tax                    100.00
DIF Special Index Fee                 5.50
REC Recording Fee                     9.50
PRN Printer Fees                      1.00
Total Fees:   $ 117.00

**EXHIBIT A**

STATE OF ALABAMA
COUNTY OF TALLADEGA

### AFFIDAVIT OF WILLIS RAY JOHNSON

Before me, the undersigned, appeared WILLIS RAY JOHNSON, a resident of the above referenced county and state, who upon being sworn, doth depoth and say as follows:

My name is Willis Ray Johnson. I am a resident of Talladega County, Alabama. I am making this affidavit to clear up confusion about the Johnson family who owned real property in St. Clair County, Alabama. My father was Roy Johnson. He and my Aunt, Thelma Johnson Odom Pike, owned property in St. Clair County that was inherited from their family. When my father passed away in 1985, he and my Aunt, Thelma Johnson Odom Pike, still owned that property. At the time of his death, he left surviving my mother, Edna Johnson, my sister, Shirley Hunter, my brother, Roger Johnson, and my self. I have seen a deed from my Aunt, Thelma Pike, to my mother, Edna Johnson, that was dated June 16, 1989. I know that my mother, Edna Johnson, gave property to my brother, Roger D. Johnson. I further know that my brother, Roger D. Johnson, had Jim Walter Homes build a house upon that property. After my brother's death, the property was repossessed by Jim Walter Homes.

My mother, Edna Johnson, is now deceased. My brother, Roger D. Johnson is now deceased. My sister, Shirley Hunter, and I are the surviving heirs of Edna Johnson, along with my brother Roger's children. My sister, Shirley Hunter, lives in St. Clair County. I am currently unaware of the location of my deceased brother Roger's wife and children.

I have been asked previously to document the title of my family and to sign a warranty deed conveying my portion of my father's share of the above referenced property. I believe that I may have signed such papers but am uncertain and do not know the location of those papers now. I further do not know if my sister, Shirley Hunter, or the heirs of Roger Johnson were contacted or signed such documents. I do not believe that my sister, Shirley Hunter, would agree voluntarily to sign such papers now.

Further affiant saith not.

Done this the 6 day of JULY , 2007.

_Willis Ray Johnson_
Willis Ray Johnson

State of Alabama
County of Talladega

Sworn to and subscribed before me, this the 6th day of July , 2007.

_Cathy Holzman_
Notary Public

MY COMMISSION EXPIRES MARCH 30, 2010

**EXHIBIT A**

## AFFIDAVIT

**STATE OF ALABAMA**
**COUNTY OF TALLADEGA**

Before me, the undersigned authority, a notary public in and for said County in said State, appeared **Willis Ray Johnson**, who is known to me, is over the age of nineteen years, and has personal knowledge of the matters stated herein, and who, being first duly sworn, does depose and say:

"My name is Willis Ray Johnson and I am a resident of Talladega County, Alabama. My father was Roy Johnson and my mother was Edna Johnson. My father had three children: myself, Roger Johnson and Shirley Hunter.

My father and my aunt, Thelma Johnson Odom Pike, owned property in St. Clair County that was inherited from their family. My father and aunt still owned this property when my father passed away in 1985. My father died intestate and at the time of his death, his wife, Edna Johnson was still living, along with all three of their children, myself, Roger Johnson and Shirley Hunter. At the time of his death, my father's estate was worth substantially less than $50,000.00."

Further, the Affiant sayeth not.

_Willis Ray Johnson_
Willis Ray Johnson

Sworn to and subscribed before me on this the 17th day of December, 2007.

_Tina Renae Ferguson_
Notary Public
My Commission Expires: 3/27/2011

(SEAL)

**EXHIBIT A**